IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN AIELLO
15316 Jordans Journey Drive
Centreville, Virginia 20120,

        Plaintiff,

v.

        Civil Action No. 08-CV-00130 (EGS)

NOVARTIS PHARMACEUTICALS CORP.
One Health Plaza
East Hanover, New Jersey 07936,

        Defendant.

## <u>DEFENDANT'S MOTION TO DISMISS COUNTS V, VI, VII AND VIII OF PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Defendant Novartis Pharmaceuticals Corporation ("NPC"), by its attorneys, respectfully moves to dismiss Counts V, VI, VII and VIII of Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  As more fully set forth in the Memorandum of Points and Authorities filed contemporaneously herewith, Counts V, VI, VII and VIII fail to state a claim on which relief can be granted and should be dismissed in their entirety.

WHEREFORE, Defendant Novartis Pharmaceuticals Corporation respectfully requests this Court to dismiss Counts V, VI, VII and VIII of Plaintiff's First Amended Complaint and for such other and further relief as the Court deems just and proper in the circumstances.

Respectfully submitted,

NOVARTIS PHARMACEUTICALS
CORPORATION


By: s/ David M. Hernandez
        David M. Hernandez
        D.C. Bar Number 473952
        Vedder Price P.C.
        875 15th Street N.W., Suite 725
        Washington, D.C.  20005
        Telephone:  212-312-3320
        Facsimile:  212-312-3322

Thomas M. Wilde
Sara J. Kagay
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
Telephone:  (312) 609-7500
Facsimile:  (312) 609-5005

Dated:  June 2, 2008

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 2nd day of June, 2008, a copy of the foregoing Defendant's Motion to Dismiss Counts V, VI, VII and VIII of Plaintiff's First Amended Complaint was electronically filed and served by depositing the same in the U.S. Mail, with first-class postage affixed, as follows:

Lisa Alexis Jones
Lisa Alexis Jones, PLLC
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005


    s/ David M. Hernandez
An Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN AIELLO<br>15316 Jordans Journey Drive<br>Centreville, Virginia 20120,<br><br>      Plaintiff,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORP.<br>One Health Plaza<br>East Hanover, New Jersey 07936,<br><br>      Defendant. | Civil Action No. 08-CV-00130 (EGS) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION TO DISMISS COUNTS V, VI, VII AND VIII
OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.   INTRODUCTION

On January 23, 2007, Novartis Pharmaceuticals Corporation ("NPC") terminated Area Sales Manager Brian Aiello ("Plaintiff") for misconduct (Am. Cmplt. ¶¶14-16).   On May 6, 2008, Plaintiff filed an eight-Count First Amended Complaint alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.* (Count I); age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §621 *et seq.* (Count II); gender discrimination in violation of the District of Columbia Human Rights Act (the "DCHRA"), D.C. Code §2-1401 *et seq.* (Count III); age discrimination in violation of the DCHRA (Count IV); wrongful termination in violation of public policy (Count V); breach of contract (Count VI); breach of the implied covenant of good

faith and fair dealing (Count VII); and defamation (Count VIII).[1]  A copy of the First Amended Complaint is attached as Exhibit A for the Court's convenience.

Even though Plaintiff already has had the benefit of filing an amended complaint, he still fails to state a claim for wrongful discharge, breach of contract, breach of the implied covenant of good faith and fair dealing or defamation (Counts V, VI, VII and VIII).  Plaintiff's pleading deficiencies are fatal to his claims, and as more fully explained below, Counts V, VI, VII and VIII of his First Amended Complaint should be dismissed in their entirety.

## II.    ARGUMENT

### A.    Legal Standard

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts to support his claims.  *Wiggins v. Dist. Cablevision, Inc*., 853 F. Supp. 484, 488 (D.D.C. 1994).  While the allegations of a complaint are construed in the light most favorable to the non-movant, "legal conclusions, deductions or opinions couched as factual allegations are not given the presumption of truthfulness."  *Id*. (quoting 2A Moore's Federal Practice, § 12.07, at 63 (2d ed. 1986)).  Plaintiff has not plead any facts sufficient to state a cause of action in Counts V, VI, VII or VIII.  As a result, those claims are ripe for dismissal.

### B.    Plaintiff Fails to State a Claim for Wrongful Discharge

Plaintiff's common law claim for wrongful discharge in violation of public policy should be dismissed because it is simply an impermissible effort by Plaintiff to restate the same claims he asserts under the DCHRA.  *See Vitikacs v. The Am. Legion*, No. 02-CA-10202, 2003 WL

---

[1]   Plaintiff's original Complaint was filed on January 23, 2008 and contained the same Counts, but it was not served on NPC until Plaintiff filed and served the First Amended Complaint.

22004935, at *4 (D.C. Super. June 8, 2003) (attached as Exhibit B); *see also Bickers v. Western & Southern Life Ins. Co.,* 116 Ohio St. 3d 351, 358 (2007) (employees have no public policy claim for wrongful discharge because they have a statutory claim); *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 242 (2002) ("there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests"); *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 423 (citing *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 614-15 (1989)) ("if [statutory and regulatory] provisions already provide an adequate and appropriate civil remedy for the wrongful discharge the claim will fail."); *Burnham v. Karl and Gelb, P.C.*, 745 A. 2d 178, 183 (Conn. 2000) (plaintiff's wrongful discharge claim "precluded by virtue of the existence of a statutory remedy"). Here, Plaintiff improperly alleges both discrimination in violation of the DCHRA (Counts III and IV) and wrongful discharge in violation of public policy (Count V), and specifically asserts in Count V that his wrongful discharge claim is based on the public policies included in the DCHRA (Am. Cmplt. ¶39). Plaintiff cannot have two bites at the apple, and Count V of Plaintiff's First Amended Complaint should be dismissed.

### C.  <u>Plaintiff Fails To State a Claim For Breach of Contract</u>

In Count VI, Plaintiff alleges breach of an oral contract. As a matter of law, this claim is subject to dismissal because Plaintiff has failed to allege the requisites for a valid contract. To state a claim for breach of an oral contract, Plaintiff must allege offer, acceptance, a meeting of the minds, definiteness of essential material terms, intent of the parties to be bound, and consideration. *Virtual Dev. & Defense Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 16-17 (D.D.C. 2001). Here, Plaintiff fails to allege offer, meeting of the minds, definiteness of essential terms or intention to be bound. Therefore, he fails to state a claim. Plaintiff only asserts:

- [He] was employed by defendant under an oral contract of employment which was modified and re-enforced by certain policies, practices, assurances and other express and implied statements of defendant (Am. Cmplt. ¶43).

- In said contract, it was implicitly agreed that [Plaintiff] would not be impeded in his job duties, and that he would be terminated only for cause (Am. Cmplt. ¶43).

- [Plaintiff] entered into said contract, *inter alia*, to secure peace of mind and financial stability, and refrained from seeking employment elsewhere in reliance thereon (Am. Cmplt. ¶43).

- At all times relevant herein, [Plaintiff] performed his obligations under his contract with defendant. Defendant breached its express and implied contractual commitments to [Plaintiff] by terminating his employment without cause (Am. Cmplt. ¶44).

Plaintiff's claim for breach of oral contract fails.

Plaintiff's failure to properly plead breach of an oral contract is highlighted by the fact that he inconsistently and interchangeably refers to NPC's alleged commitments and statements as "implied." (Am. Cmplt. ¶¶43, 44). However, an implied contract is an agreement that <u>has</u> <u>not</u> <u>been</u> committed to writing or <u>stated orally</u>, but is inferred from the conduct of the parties. *Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, 198 (D.D.C. 2007). Even if his claim is actually for an implied contract, it still fails. To state an implied contract claim, Plaintiff must allege: (1) valuable services were rendered; (2) for the person sought to be charged; (3) which services were accepted, used and enjoyed by the person sought to be charged; (4) under such circumstances as reasonably notified the person sought to be charged that the person rendering the service expected to be paid by him. *Id.* Plaintiff has not plead <u>any</u> of these elements. In addition, Plaintiff must also plead all the necessary elements of a contract (offer, acceptance, consideration), which, as set forth above, he has not done. *Paul v. Howard Univ.*, 754 A. 2d 297, 311 (App. D.C. 2000). Accordingly, to the extent Plaintiff is trying to state a claim for breach of an implied contract, he also fails. Count VI should be dismissed.

**D.      Plaintiff Fails To State a Claim For Breach of The Implied Covenant of Good Faith and Fair Dealing**

Count VII is subject to dismissal for similar and additional reasons.  As an initial matter, Plaintiff cannot even bring a claim for breach of the implied covenant of good faith and fair dealing because, as set forth above, he has not properly alleged the elements of an underlying contract between him and NPC.  *Paul*, 754 A.2d at 310 n. 28 (plaintiff cannot bring a claim for breach of the implied covenant of good faith and fair dealing where there is no contract to form the basis); *see also Lance v. United Mine Workers of America 1974 Pension Trust*, 355 F. Supp. 2d 358, 362 (D.D.C. 2005), *vacated in part on other grounds*, 400 F. Supp. 2d 29 (D.D.C. 2005) ("Obviously, before an implied covenant of good faith and fair dealing exists there must first be a contract itself.").

Furthermore, it is well-settled that breach of an implied covenant is not an independent cause of action when the allegations are identical to other claims for relief.  *Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, No. 04-838, 04-687, 2006 WL 1147933, at *5 (D.D.C. April 28, 2006) (attached as Exhibit C).  Here, the allegations in Count VII (good faith and fair dealing) are virtually identical to the allegations in Count VI (breach of contract) (Am. Cmplt. ¶¶48-49).  Accordingly, Count VII is not proper and should be dismissed.

**E.      Plaintiff Fails To State a Claim For Defamation**

To survive a motion to dismiss, a claim for defamation must be pled with particularity, including time, place, content, speaker, and listener of the alleged defamatory statement. *Wiggins*, 853 F. Supp. at 494; *Coates v. Law School Admission Council*, No. 105-CV-0641-JDB, 2005 WL 3213960, at *2 (D.D.C. Oct. 25, 2005) (attached as Exhibit D); *Black v. National Football League Players Ass'n*, 87 F. Supp. 2d 1, 6 (D.D.C. 2000).  Plaintiff fails to do so,

alleging only that unnamed "agents, supervisors or employees" published unspecified "false and unprivileged communications" to "other persons in [Plaintiff's] profession" (Am. Complt. ¶54).

Plaintiff fails to state when or where these alleged statements were made, what was said, by whom or who heard them. These vague allegations lack the level of specificity required to state a claim for defamation. Given the heightened pleading standard for defamation claims, Plaintiff's conclusory allegations are insufficient to withstand a motion to dismiss.

## III.    **CONCLUSION**

Plaintiff started out with claims for gender and age discrimination and then tacked on a variety of deficient common law claims for good measure. Even construing all allegations in Plaintiff's favor, none of the common law claims survive. Plaintiff's claims for wrongful discharge, breach of contract, breach of the covenant of good faith and fair dealing and defamation are improperly pled and must be dismissed. Accordingly, NPC respectfully requests that this Court dismiss Counts V, VI, VII and VIII of Plaintiff's First Amended Complaint in their entirety, and grant any other appropriate relief it deems necessary. A proposed order will also be filed as an attachment.

Respectfully submitted,

NOVARTIS PHARMACEUTICALS
CORPORATION

By: s/ David M. Hernandez
        David M. Hernandez
        D.C. Bar Number 473952
        Vedder Price P.C.
        875 15th Street N.W., Suite 725
        Washington, D.C.  20005
        Telephone:  212-312-3320
        Facsimile:  212-312-3322

Thomas M. Wilde
Sara J. Kagay
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
Telephone:  (312) 609-7500
Facsimile:  (312) 609-5005

Dated:  June 2, 2008

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 2nd day of June, 2008, a copy of the foregoing Defendant's Memorandum of Law in Support of its Motion to Dismiss Counts V, VI, VII and VIII of Plaintiff's First Amended Complaint was electronically filed and served by depositing the same in the U.S. Mail, with first-class postage affixed, as follows:

> Lisa Alexis Jones
> Lisa Alexis Jones, PLLC
> 1200 G Street, N.W.
> Suite 800
> Washington, D.C. 20005

> ___s/ David M. Hernandez_____
> An Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN AIELLO
15316 Jordans Journey Drive
Centreville, Virginia 20120,

           Plaintiff,

v.

NOVARTIS PHARMACEUTICALS CORP.
One Health Plaza
East Hanover, New Jersey 07936,

           Defendant.

Civil Action No. 08-CV-00130 (EGS)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRIAN AIELLO | ) | |
| 15316 Jordans Journey Drive | ) | |
| Centreville, Virginia 20120 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08 CV 00130 |
| | ) | (EGS) |
| NOVARTIS PHARMACEUTICALS CORP. | ) | |
| One Health Plaza | ) | |
| East Hanover, New Jersey 07936 | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT FOR DISCRIMINATION**

COMES NOW Plaintiff Brian Aiello, by and through undersigned counsel, and states as follows:

1.    Plaintiff brings this action pursuant to Title VII of the United States Civil Rights Act, the Age Discrimination in Employment Act, the District of Columbia Human Rights Act and the common laws of the District of Columbia for discrimination on the basis of age and gender, as well as wrongful termination in violation of public policy, breach of contract, breach of the implied covenant of good faith and fair dealing, and defamation.

**JURISDICTION AND VENUE**

2.    Jurisdiction of this court is founded pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1346. Plaintiff also invokes this Court's pendent jurisdiction to adjudicate state law claims.

3.    Venue lies in this Court, pursuant to 28 U.S.C. §§1391 and 1402, since the employment practices alleged to be unlawful were committed by defendant and its agents within the District of Columbia and the United States District Court for the District of Columbia maintains

jurisdiction because defendant Novartis does business within the jurisdiction of this Court.

## PARTIES

4.      Plaintiff, Brian Aiello ("Aiello"), is a male citizen of the United States and a bona fide resident of the State of Virginia.  At all material times alleged in this Complaint, Aiello was over 40 years old.

5.      Defendant, Novartis Pharmaceuticals Corporation ("Novartis"), was and is now a corporation duly organized and existing under the laws of the State of Delaware, maintaining its corporate headquarters at One Health Plaza, East Hanover, New Jersey 07936 and operates a business unit at 701 Pennsylvania Avenue, N.W., Suite 725, Washington, D.C. 20004.  Novartis is a world leader in offering medicines to protect health, cure disease and improve well-being. Novartis researches, develops and markets leading innovative prescription drugs used to treat a broad range of disease areas.  Novartis was and now does business in the District of Columbia through its Sales Representatives and Managers, such as Aiello, who were assigned to service the Washington metropolitan area territory marketing and selling pharmaceutical drugs to medical physicians in the District of Columbia.

6.      At all times material herein, Novartis was acting through its agents, servants and employees, who were authorized and acting within the scope of their authority, course of employment and under the direct control of Novartis.

## FACTS COMMON TO ALL COUNTS

7.      From December 1, 1986 to January 23, 2007, Aiello was employed by Novartis for the Washington, D.C. region.  During the course of his employment, Aiello held the positions of Sales Representative, District Manager, Regional Account Manager, and Area Sales Manager.  By

January 2007, Aiello had risen to the level of Area Sales Manager for the Washington, D.C., district. In that capacity, Aiello directed a team of sales representatives who were dedicated to meeting or exceeding sales objectives and enhanced the stature of Novartis Pharmaceuticals Corporation in the medical marketplace/community. Aiello's team served the Washington metropolitan area by marketing and selling pharmaceutical products to primary care physicians, gastroenterologists, dermatologist and cardiologists in Washington, D.C., Maryland and Virginia. Aiello was also responsible for developing and implementing creative sales strategies to promote and increase Novartis's product market share; training and mentoring new sales representative and advising them of successful sales and relationship building strategies; and coordinating educational programs for physicians in an effort to increase awareness of disease states and treatment options.

8.      By all accounts, Aiello enjoyed consistently positive performance reviews by his prior supervisors. At no time during his employment tenure at Novartis had Aiello ever never been advised by any supervisor that his work performance did not meet the company's expectations. And, during his tenure of employment, Aiello was recognized for numerous achievements and awards for exemplary service.

9.      On or about November 19, 2004, a group of then current and former female Novartis employees sued Novartis and its parent corporation, Novartis Corporation, alleging that Novartis had engaged in a pattern of gender discrimination in employment in the United States District Court for the Southern District of New York, <u>Velez v. Novartis Corporation, et al.,</u> Case No. 04 CV 09194.

10.     On or about June 3, 2005, a Second Amended Complaint was filed in the above action. By that amended complaint, Jamie Holland, a former subordinate of Aiello's, complained that Aiello had made "sexual jokes" in her presence during the course of her employment.

3

11.     On or about July 25, 2005, Novartis filed an Answer to the Second Amended Complaint. In its Answer, Novartis categorically denied that Aiello had engaged in any unlawful conduct against Holland.

13.     Indeed, Aiello vehemently denied engaging in any of the sexually or racially offensive conduct alleged by Ms. Holland in the Velez complaint.

14.     Aiello never engaged in any unlawful conduct toward or relating to the civil rights of any Novartis employee during his professional tenure.

15.     From June 2005 to January 2007, Aiello was never reprimanded, counseled or issued any warnings by Novartis relating to the conduct alleged by Ms. Holland in the Velez complaint.

16.     On January 23, 2007, two years after Holland lodged her allegations against him, Aiello was terminated, without cause or justification, from his twenty-year employment with Novartis.

17.     A female sales manager under the age of 40 was placed in Aiello's position.

18.     Upon information and belief, since the filing of the Velez suit, Novartis has engaged in a pattern and practice of discrimination against its male employees over the age of 40.

19.     On or about June 11, 2007, Aiello filed a complaint with the United States Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights alleging age and gender discrimination in employment under Title VII and the Age Discrimination in Employment Act.

20.     On November 2, 2007, the Equal Employment Opportunity Commission mailed to Aiello a letter authorizing his Right to Sue under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.

4

**FIRST CAUSE OF ACTION**
**Violation of Title VII – Gender Discrimination**

21.   Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "20" as if originally pleaded herein.

22.   Defendant, through its agents or supervisors, unlawfully discriminated against Aiello in his employment because of his sex without cause or justification in violation of Title VII, as amended.

23.   As a direct and proximate result of the illegal employment discrimination by defendant, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

24.   Aiello is informed and believes that the outrageous conduct of defendant described above was done with malice and with conscious disregard for his federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)   To award him, under Title VII, reinstatement to his prior position as Area Sales Manager;

(b)   To award him, under Title VII, all the back pay, front pay and fringe benefits he has lost as a result of defendant's unlawful discrimination against him;

(c)   To award him, under Title VII, compensatory damages in an amount to be determined at trial;

(d)   To award him, under Title VII, punitive damages in the amount of five million dollars

($5,000,000.00);

(e)     To award him reasonable attorney's fees and costs of this action; and

(f)     To award him such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Violation of the Age Discrimination in Employment Act

25.     Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "24" as if originally pleaded herein.

26.     Defendant, through its agents or supervisors, unlawfully discriminated against Aiello in his employment because of his sex without cause or justification in violation of the Age Discrimination in Employment Act.

27.     As a direct and proximate result of the illegal employment discrimination by defendant, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

28.     Aiello is informed and believes that the outrageous conduct of defendant described above was done with malice and with conscious disregard for his federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award him, under the Age Discrimination in Employment Act, reinstatement to his prior position as Area Sales Manager;

(b)     To award him, under the Age Discrimination in Employment Act, all the back pay, front pay and fringe benefits he has lost as a result of defendant's unlawful discrimination against

6

him;

(c)     To award him, under Age Discrimination in Employment Act, liquidated damages in an amount to be determined at trial;

(d)     To award him reasonable attorney's fees and costs of this action; and

(e)     To award him such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
**Violation of the District of Columbia Human Rights Act – Gender Discrimination**

29.     Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "28" as if originally pleaded herein.

30.     Defendant, through its agents or supervisors, unlawfully discriminated against Aiello in his employment when it without cause or justification terminated his employment because of his sex, in violation of the District of Columbia Human Rights Act.

31.     As a direct and proximate result of the illegal discriminatory conduct by defendant, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

32.     Aiello is informed and believes that the outrageous conduct of defendant described above was done with malice and with conscious disregard for his state protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award him, under the District of Columbia Human Rights Act, reinstatement to his prior position as Area Sales Manager;

7

(b)     To award him, under the District of Columbia Human Rights Act, all the back and front pay and fringe benefits he has lost as a result of defendant's unlawful discrimination against him;

(c)     To award him, under the District of Columbia Human Rights Act, compensatory damages in an amount to be determined at trial;

(d)     To award him, under the District of Columbia Human Rights Act, punitive damages in the amount of five million dollars ($5,000,000.00);

(e)     To award him reasonable attorney's fees and costs of this action; and

(f)     To award him such other and further relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Violation of the District of Columbia Human Rights Act - Age Discrimination

33.     Plaintiff hereby adopts and incorporates by reference as if fully set forth herein, each and every allegation contained in Paragraphs "1" through "32" hereinabove set forth.

34.     By the actions set out above, defendant has denied plaintiff the rights and privileges secured by the District of Columbia Human Rights Act, because of his age.

35.     As a direct and proximate result of the illegal employment action by defendant, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

36.     Aiello is informed and believes that the outrageous conduct of defendant described above was done with malice and with conscious disregard for his state protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

8

WHEREFORE plaintiff respectfully prays this Court:

(a)      To award him, under the District of Columbia Human Rights Act, reinstatement to his prior position as Area Sales Manager;

(b)      To award him, under the District of Columbia Human Rights Act, all the back and front pay and fringe benefits he has lost as a result of defendant's unlawful discrimination against him;

(c)      To award him, under the District of Columbia Human Rights Act, compensatory damages in an amount to be determined at trial;

(d)      To award him, the District of Columbia Human Rights Act, punitive damages in the amount of five million dollars ($5,000,000.00);

(e)      To award him reasonable attorney's fees and costs of this action; and

(f)      To award him such other and further relief as this Court deems just and proper.

### FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy

37.      Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "36" as if originally pleaded herein.

38.      Defendant, through its agents or supervisors, unlawfully terminated Aiello's employment because of his sex and age.

39.      It is the public policy of the District of Columbia as expressed in the District of Columbia Human Rights Act, and in the common law, that individuals shall not be discriminated against in their employment on the basis of their sex or age.

40.      As a direct and proximate result of defendant's termination of Aiello, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and

9

emotional distress.  Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

41.    Aiello is informed and believes that the outrageous conduct of defendant described above was done with malice and with conscious disregard for his state protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)    To award him reinstatement to his prior position as Area Sales Manager;

(b)    To award him all the back and front pay and fringe benefits he has lost as a result of defendant's wrongful termination;

(c)    To award him compensatory damages in an amount to be determined at trial;

(d)    To award him punitive damages in the amount of five million dollars ($5,000,000.00);

(e)    To award him reasonable attorney's fees and costs of this action; and

(f)    To award him such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Breach of Contract

42.    Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "41" as if originally pleaded herein.

43.    Aiello was employed by defendant under an oral contract of employment which was modified and re-enforced by certain policies, practices, assurances and other express and implied statements of defendant.  In said contract, it was implicitly agreed that Aiello would not be impeded in his job duties, and that he would be terminated only for cause.  Aiello entered into said contract,

10

*inter alia*, to secure peace of mind and financial stability, and refrained from seeking employment elsewhere in reliance thereon.

44.     At all times relevant herein, Aiello performed his obligations under his contract with defendant.  Defendant breached its express and implied contractual commitments to Aiello by terminating his employment without cause.

45.     At the time the parties entered into the contract, as alleged above, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, Aiello would suffer present and future loss of earnings as a foreseeable and probable result thereof.

46.     As a direct and proximate result of defendant's termination of Aiello, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award him reinstatement to his prior position as Area Sales Manager;

(b)     To award him all the back and front pay and fringe benefits he has lost as a result of defendant's wrongful termination;

(c)     To award him compensatory damages in an amount to be determined at trial;

(d)     To award him reasonable attorney's fees and costs of this action; and

(e)     To award him such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

47.     Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "46" as if originally pleaded herein.

11

48.     Aiello was employed by defendant under an oral contract of employment upon his hire and during the term of his employment. The basic terms of the agreement provided that Aiello's employment would be secure as long as his performance was satisfactory, that Aiello would not be impeded in his job duties or career expectations, and that he would be terminated only for cause. Aiello entered into said contract, *inter alia*, to secure peace of mind and financial stability, and refrained from seeking employment elsewhere in reliance thereon.

49.     At all times relevant herein, Aiello performed his obligations under his contract with defendant.

50.     Defendant breached the covenant of good faith and fair dealing to Aiello by terminating his employment without cause.

51.     At the time the parties entered into the contract, as alleged above, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, Aiello would suffer present and future loss of earnings as a foreseeable and probable result thereof.

52.     As a direct and proximate result of defendant's termination of Aiello, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Aiello has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award him reinstatement to his prior position as Area Sales Manager;

(b)     To award him all the back and front pay and fringe benefits he has lost as a result of defendant's wrongful termination;

(c)     To award him compensatory damages in an amount to be determined at trial;

12

(d)    To award him reasonable attorney's fees and costs of this action; and

(e)    To award him such other and further relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### Defamation

53.    Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "52" as if originally pleaded herein.

54.    Aiello is informed and believes, and based thereon alleges, that defendant, through its agents, supervisors or employees acting within the scope of their employment, caused to be published false and unprivileged communications tending to directly injure Aiello and his business and professional reputation.  Specifically, defendant made untrue statements to other persons in Aiello's profession that Aiello had made sexually and racially offensive comments in the workplace.

55.    Aiello is informed and believes, and based thereon alleges, that at the time defendant made these statements it knew or had reason to know that the statements were false.

56.    Defendant committed the above acts deliberately and intentionally, in an effort to injure and defame Aiello's good name and professional reputation.

57.    As a direct and proximate result of defendant's defamation, Aiello has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Aiello has suffered and will continue to suffer a loss of earnings, injury to his personal and professional reputation and other employment benefits and job opportunities.

58.    Aiello is informed and believes that the outrageous conduct of defendant described above was done with malice and with conscious disregard for his state protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

13

WHEREFORE plaintiff respectfully prays this Court:

(a)    To award him compensatory damages in an amount to be determined at trial;

(b)    To award him punitive damages in the amount of five million dollars ($5,000,000.00);

(c)    To award him reasonable attorney's fees and costs of this action; and

(d)    To award him such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Respectfully submitted,

/s/ Lisa Alexis Jones
Lisa Alexis Jones, Esq.
Lisa Alexis Jones, PLLC
Unified Bar Number 421002
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-4507
(202) 434-8707 (Fax)
orbitcv@erols.com

*Counsel for Plaintiff*

Dated: January 23, 2008

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN AIELLO
15316 Jordans Journey Drive
Centreville, Virginia 20120,

        Plaintiff,

v.

NOVARTIS PHARMACEUTICALS CORP.
One Health Plaza
East Hanover, New Jersey 07936,

        Defendant.

Civil Action No. 08-CV-00130 (EGS)

# EXHIBIT B

Westlaw.

Not Reported in A.2d                                                                                  Page 1
Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.)
**(Cite as: Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.))**

▷
Vitikacs v. American Legion
D.C. Super.,2003.
Only the Westlaw citation is currently available.
     Superior Court of the District of Columbia.
          John VITIKACS, Plaintiff
                       v.
     THE AMERICAN LEGION, Defendant
               No. 02-CA-10202.

                  June 8, 2003.
          Reconsideration Denied July 28, 2003.


     *ORDER GRANTING IN PART AND DENYING IN
      PART DEFENDANTS' RENEWED MOTION TO
           DISMISS PLAINTIFFS' CLAIMS*

KRAVITZ, J.
**\*1** This matter is before the Court on the defend-
ants' motion to dismiss all seven counts of the third
amended complaint for failure to state a claim upon
which relief can be granted. *See* Super. Ct. Civ. R.
12(b)(6). The Court has carefully considered the
legal authorities cited in the defendants' motion, the
plaintiffs' opposition, and the defendants' reply, as
well as the exhibits appended to the parties' briefs
and the entire record of the case. For the reasons set
forth below, the Court concludes that the defend-
ants' motion must be granted in part and denied in
part.


                     Analysis


In considering a Rule 12(b)(6) motion to dismiss
for failure to state a claim upon which relief can be
granted, the Court must construe the complaint "in
the light most favorable to the plaintiff" and must
accept as true all allegations of fact set forth in the
complaint. *Larijani v. Georgetown University,* 791
A.2d 41, 43 (D.C.2002) (quoting *McBryde v.
Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979)).
Only where it appears "beyond doubt" that the
plaintiff can prove no set of facts in support of his

claim that would entitle him to relief may a com-
plaint be dismissed under Rule 12(b)(6). *Id.; Owens
v. Tiber Island Condo. Ass'n,* 373 A.2d 890, 893
(D.C.1977) (quoting *Conley v. Gibson,* 355 U.S. 41,
45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

To the extent that the Court considers matters
presented by the parties outside the pleadings, the
Court is required to treat the defendants' motion as
one for summary judgment. Super. Ct. Civ. R.
12(b). To prevail on a motion for summary judg-
ment, the moving party must demonstrate, based
upon the pleadings, discovery, and any affidavits or
other materials submitted, that there is no genuine
issue as to any material fact and that it is therefore
entitled to judgment as a matter of law. *Grant v.
May Department Stores Co.,* 786 A.2d 580, 583
(D.C.2001); Super. Ct. Civ. R. 56(c). A trial court
considering a motion for summary judgment must
view the pleadings, discovery materials, and affi-
davits or other materials in the light most favorable
to the non-moving party and may grant the motion
only if a reasonable jury, having drawn all reason-
able inferences in favor of the non-moving party,
could not find for the non-moving party based upon
the evidence in the record. *Grant,* 786 A.2d at 583
(citing *Nader v. De Tolendano,* 408 A.2d 31, 42
(D.C.1979)); *Bailey v. District of Columbia,* 668
A.2d 812, 816 (D.C.1995). The moving party has
the initial burden of proving that there is no issue of
material fact in genuine dispute. If the moving
party carries its initial burden, then the non-moving
party assumes the burden of establishing that there
is an issue of material fact in genuine dispute.
*Grant,* 786 A.2d at 593 (citing *O'Donnell v. Associ-
ated Gen. Contractors of America, Inc.,* 645 A.2d
1084, 1086 (D.C.1994)).


*Count I: Vitikacs' D.C. Human Rights Act Claim of
Wrongful Discharge/Retaliation Against The Amer-
ican Legion*

**\*2** The American Legion contends that Vitikacs'

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in A.2d                                                    Page 2
Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.)
(Cite as: Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.))

D.C. Human Rights Act claim is barred by the one-year statute of limitations made applicable to such claims by D.C.Code § 2-1403.16(a) (2001). In opposition, Vitikacs concedes that he brought this claim more than one year after his discharge, but he asserts that his claim is timely because the limitations period was tolled while his administrative complaint against the defendant was pending before the D.C. Office of Human Rights ("DCOHR"). In this regard, D.C.Code § 2-1403.16(a) provides that "[t]he timely filing of a complaint with [the DCOHR] shall toll the running of the statute of limitations while the complaint is pending before [the DCOHR]."

The record reflects that in early December 2001 Vitikacs filed a timely complaint against The American Legion with the United States Equal Employment Opportunity Commission ("EEOC") and that the EEOC, acting pursuant to a "worksharing agreement" with the DCOHR, "cross-filed" Vitikacs' administrative complaint with the DCOHR by transmitting it to the agency on December 14, 2001. Vitikacs alleges at paragraph 51 of the third amended complaint that he withdrew his administrative complaint at the DCOHR on January 30, 2003 so that he could pursue this action. The issues before the Court, therefore, are whether the EEOC's transmittal of Vitikacs' administrative complaint to the DCOHR on December 14, 2001 constituted the "filing" of a complaint with the DCOHR within the meaning of D.C.Code § 2-1403.16(a) and, if so, whether Vitikacs' complaint remained "pending" before the DCOHR within the meaning of the statute even though, as the record indicates, the DCOHR deferred entirely to the EEOC's investigation of the complaint.[FN1]

> FN1. The American Legion has not sought dismissal of Count I on the ground that Vitikacs' administrative complaint, which Vitikacs did not withdraw from the DCOHR until January 30, 2003, was still pending at the time Vitikacs filed this action. Cf.D.C.Code § 2-1403.16(a)

(providing for a private right of action under the D.C. Human Rights Act "unless [the complainant] has filed [an administrative] complaint hereunder").

The District of Columbia Court of Appeals has not addressed either of the two questions raised by The American Legion's motion to dismiss Count I, thereby leaving the parties to rely upon competing trial court decisions in support of their respective positions. Vitikacs points to Estanos v. PAHO/ WHO Federal Credit Union, Civil Action No. 01-9125 (D.C.Super.Ct.2003), a decision of the Superior Court of the District of Columbia in which Judge Combs Greene held that the EEOC's transmittal of a complaint to the DCOHR pursuant to the agencies' worksharing agreement constitutes the "filing" of the complaint with the DCOHR for the purpose of tolling the statute of limitations under D.C.Code § 2-1403.16(a). The American Legion points to Griffin v. The Acacia Group, 1998 U.S. Dist. LEXIS 10854, *12-13 (D.D.C.1998), a decision of the United States District Court for the District of Columbia in which Judge Hogan held that a complaint is not "pending before" the DCOHR within the meaning of § 2-1403.16(a) when the EEOC has cross-filed a complaint with the DCOHR pursuant to the agencies' worksharing agreement but the DCOHR has deferred to the EEOC's investigation.

As the parties recognize, neither Estanos nor Griffin is binding upon a judge of this Court. The Court nevertheless has carefully studied those decisions, as well as the pertinent language of D.C.Code § 2-1403.16(a) and the relevant legislative history of the D.C. Human Rights Act. Having done so, the Court concludes that a complaint transmitted by the EEOC to the DCOHR pursuant to the agencies' worksharing agreement-that is, a complaint that the EEOC has "cross-filed" with the DCOHR pursuant to the worksharing agreement, see42 U.S.C. § 2000e-5(d)-is "filed" with the DCOHR at the time of transmittal. The Court concludes further that such a complaint remains

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

"pending before" the DCOHR within the meaning of § 2-1403.16(a) until the complaint is either withdrawn by the complaint, dismissed by the DCOHR on the ground of administrative convenience, or resolved by the DCOHR on its merits.

**\*3** The Court's interpretation of the tolling provision contained within D.C.Code § 2-1403.16(a) is supported by the statute's plain language. Since "any person or organization, whether or not an aggrieved party," may file a discrimination complaint with the DCOHR, D.C.Code § 2-1403.04, it is difficult to imagine why the EEOC's cross-filing of a complaint with the DCOHR would not constitute a "filing" within the meaning of the tolling provision. Moreover, nothing in the statutory language suggests that a complaint cross-filed with the DCOHR should not be deemed to be "pending" before the DCOHR simply because the EEOC takes the lead in the investigation of the complaint. Common usage and understanding of the term "pending" is fully consistent with the Court's conclusion that a complaint filed with the DCOHR remains pending before the agency until it is withdrawn, dismissed for administrative convenience, or resolved on the merits.[FN2]

> FN2. In this regard, the Court must respectfully disagree with Judge Hogan's contrary holding in *Griffin,* which the Court finds unjustifiably inflexible and inconsistent with the statutory language and intent.

The Court's interpretation of the tolling provision also is supported by the apparent intent of the legislature to enable complainants to pursue court action after their administrative complaints have been either withdrawn or dismissed without rulings on the merits. Indeed, as Judge Combs Greene explained in *Estanos,* the principal purpose of a statute of limitations-the protection of defendants from having to defend against stale claims-is not in any way frustrated by the Court's interpretation of D.C.Code § 2-1403.16(a). Any defendant that is the subject of a timely administrative complaint is

fairly on notice that it must investigate and prepare a defense to the claim against it.

The Court thus holds that the one-year statute of limitations period set forth in D.C.Code § 2-1403.16(a) was tolled on December 14, 2001 upon the EEOC's "cross-filing" of Vitikacs' administrative complaint with the DCOHR. Vitikacs' D.C. Human Rights Act claim, filed initially in this action on December 6, 2002 concerning his discharge on September 5, 2001, therefore is not barred by the statute of limitations, and The American Legion's motion to dismiss Count I must be denied.

*Count II: Vitikacs' Defamation Claim Against The American Legion*

The American Legion contends that Vitikacs' defamation claim must be dismissed because it was filed outside the applicable one-year statute of limitations period and because Vitikacs has not alleged that The American Legion ever published to any third person the allegedly defamatory material contained within Vitikacs' discharge letter. Vitikacs agrees that defamation carries a one-year statute of limitations period. In opposition, however, his counsel asserts that on December 13, 2001-less than one year before Vitikacs filed his first amended complaint on December 12, 2002 adding the defamation claim-Vitikacs was forced to "self-publish" the allegedly defamatory material as part of the application process for another job. Vitikacs contends, in this regard, that the Court should adopt a rule from other jurisdictions that allows a plaintiff in limited circumstances to prove publication by establishing that he was "compelled" to publish the defamatory material himself.

**\*4** The Court need not decide at this time whether under District of Columbia law a defamation claim can be based upon a theory of compelled self-publication, as it remains to be seen whether Vitikacs will be able to present any evidence of his own compelled publication of the discharge letter he received from The American Legion. Counsel

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for Vitikacs asserts in the plaintiffs' opposition that such compelled publication occurred on December 13, 2001, but the third amended complaint is silent on the issue, and Vitikacs has filed no affidavit or other evidence in support of his counsel's assertion. The Court could dismiss the defamation count solely on the ground that the third amended complaint does not allege any act of publication-either by The American Legion or by Vitikacs himself. In light of the allegation of compelled self-publication contained in Vitikacs' opposition, however, the Court believes that the most efficient approach is to deny The American Legion's motion as to Count II without prejudice to its being renewed as part of a motion for summary judgment following the close of discovery. If Vitikacs is able to present evidence of a compelled self-publication of the discharge letter, then the Court will decide the legal question of whether such alleged self-publication is sufficient to state a claim of defamation under District of Columbia law.

*Count III: Vitikacs' Common Law Wrongful Discharge/Public Policy Claim Against The American Legion*
The American Legion asserts that Vitikacs' common law claim of wrongful discharge in violation of public policy must be dismissed because it is the result of an impermissible effort by Vitikacs to re-state an alleged statutory violation of the D.C. Human Rights Act as a common law violation of public policy. Vitikacs has not submitted any argument in opposition to The American Legion's position on this count. *Cf.*Super. Ct. Civ. R. 12-I(e) (authorizing the Court to treat as conceded a motion to which no timely memorandum of opposing points and authorities has been filed). For the reasons set forth in the defendants' motion and reply, the Court concludes that Vitikacs' common law claim of wrongful discharge in violation of public policy fails to state a claim upon which relief can be granted and therefore must be dismissed.

*Count IV: Vitikacs' Intentional Infliction of Emo-*

*tional Distress Claim Against The American Legion*

The sole basis for The American Legion's motion to dismiss Vitikacs' claim of intentional infliction of emotional distress is that the claim is inextricably intertwined with Vitikacs' D.C. Human Rights Act claim and that it is therefore subject to the same one-year statute of limitations period as the retaliation claim alleged in Count I. The Court agrees with this proposition, and Vitikacs does not contest it. However, the doctrine of shared statute of limitations periods for intertwined claims can be fairly applied here only if the limitations period for Vitikacs' claim of intentional infliction of emotional distress is deemed to have been tolled along with the limitations period for Vitikacs' D.C. Human Rights Act claim; only in that way are the limitations periods for these intertwined claims truly shared. The Court concludes, accordingly, that Vitikacs' claim of intentional infliction of emotional distress is not time-barred and that The American Legion's motion to dismiss Count IV must be denied.

*Count V: Pullen's D.C. Human Rights Act Claim of Wrongful Discharge/Retaliation Against The American Legion*

*5 The American Legion contends that Pullen's D.C. Human Rights Act claim is barred by the one-year statute of limitations made applicable to such claims by D.C.Code § 2-1403.16(a) (2001). The American Legion acknowledges, in this regard, that the limitations period was tolled for 99 days while Pullen's administrative claim was pending before the DCOHR. The American Legion nevertheless argues that the limitations period had expired by February 3, 2003, when Pullen first filed his D.C. Human Rights Act claim as part of the second amended complaint, since February 3, 2003 was more than one year and 99 days after Pullen's discharge on September 5, 2001.

Pullen argues in opposition that the Court should deem the statutory limitations period to have been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.)
**(Cite as: Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.))**

Page 5

equitably tolled for more than the 99 days during which his administrative complaint was pending before the DCOHR. In support of this argument, Pullen explains that he withdrew his administrative complaint from the DCOHR only after a DCOHR official improperly advised him to do so. But for this improper advice, Pullen contends, his administrative complaint would have remained pending before the DCOHR, and the limitations period would have remained tolled.

The doctrine of equitable tolling does not apply here. The so-called "lulling doctrine" is inapplicable because Pullen has not alleged that The American Legion did anything to lull him into inaction; according to Pullen, it was an official of the DCOHR, not anyone connected with The American Legion, who caused him prematurely to withdraw his administrative complaint. *Cf. East v. Graphic Arts Indus. Trust,* 718 A.2d 153, 157 (D.C.1998). The discovery rule is similarly inapplicable, as the record contains no suggestion that Pullen's discovery of the basis of his claim was in any way delayed due to its latency. *Cf. Woodruff v. McConkey,* 524 A.2d 722, 727-28 (D.C.1987). Finally, the record establishes that even if an equitable tolling doctrine did apply here-which it does not-Pullen waited too long to file his action. Pullen withdrew his administrative complaint from the DCOHR on or about January 22, 2002, and the EEOC closed its investigation and issued Pullen's right-to-sue letter on August 12, 2002. Yet Pullen waited to file suit until February 3, 2003-a lengthy delay for which Pullen has alleged no satisfactory explanation. *See East,* 718 A.2d at 156-57 (stating that the doctrine of equitable tolling, when applicable, gives the plaintiff only so much extra time as is necessary).

The United States District Court's decision in *Carter v. District of Columbia,* 14 F.Supp.2d 97 (D.D.C.1998), upon which Pullen relies, is not to the contrary. Although not referred to as such, *Carter* appears to be a classic "lulling doctrine" case in which the plaintiff alleged that a government official's failure to give the plaintiff necessary information caused the plaintiff to file her lawsuit *against the government* outside the statute of limitations period. In the case before this Court, no agent of The American Legion is alleged to have done anything to contribute to Pullen's delay in filing this action.

**\*6** Pullen's claim under the D.C. Human Rights Act is therefore time-barred and must be dismissed with prejudice.

*Count VI: Pullen's Intentional Interference with Prospective Advantage Claim Against Grooms*

Grooms contends that Pullen's claim of intentional interference with prospective advantage must be dismissed because under District of Columbia law such a claim cannot be predicated upon Pullen's at-will employment status with The American Legion. The Court agrees. The District of Columbia Court of Appeals stated in *McManus v. MCI Communications Corp.,* 748 A.2d 949, 957 (D.C.2000): "This court never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, and we do not do so now."In *Riggs v. Home Builders Institute,* 203 F.Supp.2d 1, 25 (D.D.C.2002), the United States District Court for the District of Columbia interpreted *McManus* as having "clarified any confusion concerning D.C. case law" on the availability of a claim of intentional interference with prospective advantage premised upon an at-will employee's expectation of future employment. While the Court of Appeals' statements in *McManus* are not definitive, this Court sees no reason, in the absence of any contrary legal authority, to depart from the Court of Appeals' strongly articulated view that an employee may not maintain a suit for interference with prospective advantage where his expectancy was based upon an at-will employment relationship. Count VI therefore must be dismissed with prejudice for failure to state a claim upon which relief can be granted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                        Page 6
Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.)
**(Cite as: Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.))**

*Count VII: Pullen's Intentional Infliction of Emotional Distress Claim Against The American Legion*

The American Legion contends that Pullen's claim of intentional infliction of emotional distress is subject to a one-year statute of limitations period because it is intertwined with his D.C. Human Rights Act claim and that the claim is time-barred because, as with Pullen's D.C. Human Rights Act claim, the limitations period was tolled for only 99 days and Pullen brought the claim more than one year and 99 days after his discharge. The Court agrees. Pullen's intentional infliction of emotional distress claim clearly is intertwined with his D.C. Human Rights Act claim, and it must be dismissed as time-barred for the same reasons set forth above underlying the Court's decision finding the D.C. Human Rights Act claim time-barred.

### Conclusion

Accordingly, it is this *9* day of June 2003

ORDERED, that the defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. Specifically, the defendants' motion is GRANTED as to Counts III, V, VI, and VII of the third amended complaint, which are hereby DISMISSED WITH PREJUDICE, and DENIED as to Counts I, II, and IV of the third amended complaint.

*ORDER GRANTING PLAINTIFF JAMES PULLEN'S MOTION TO RECONSIDER ORDER DISMISSING HIS CLAIMS AS UNTIMELY*

**\*7** This matter is before the Court on plaintiff James Pullen's motion for reconsideration of the Court's order dated June 9, 2003 dismissing Counts V and VII of the third amended complaint.[FN1]The Court concluded in that order that Pullen's claims of retaliation under the District of Columbia Human Rights Act and of common law intentional infliction of emotional distress-claims alleged, respectively, in Counts V and VII of the third amended complaint-were time-barred due to Pullen's with-

drawal of the administrative complaint he had filed with the District of Columbia Office of Human Rights ("DCOHR") and to the inapplicability of various doctrines of equitable tolling. Pullen now asserts, for the first time, that an identical administrative complaint that he filed with the United States Equal Employment Opportunity Commission ("EEOC") on October 2, 2001 was cross-filed by the EEOC with the DCOHR on October 12, 2001 pursuant to the agencies' worksharing agreement. Stating that he never withdrew this second complaint from the DCOHR, Pullen contends that the running of the statute of limitations on his retaliation claim-and, because the two claims are intertwined, on his claim of intentional infliction of emotional distress, as well-remains tolled pursuant to D.C.Code § 2-1403.16(a) (2001).

> FN1. Pullen does not seek reconsideration of the Court's decision, also set forth in its order of June 9, 2003, to dismiss Pullen's claim of intentional interference with prospective advantage alleged in Count VI of the third amended complaint.

The defendant argues in opposition that Pullen should not be permitted at this stage of the proceedings to make a new argument that he could have made previously but failed to make. The defendant argues further that it would elevate form over substance to interpret D.C.Code § 2-1403.16(a) in a manner that enabled Pullen to rely upon an administrative complaint filed with the EEOC and cross-filed with the DCOHR when Pullen himself withdrew an identical complaint that he had filed directly with the DCOHR.

The Court shares the defendant's frustration with Pullen's failure to make the argument he now advances at an earlier stage of the proceedings. However, Pullen asserts that he did not learn of the actual cross-filing of his EEOC complaint with the DCOHR until June 19, 2003, when the EEOC responded to a request he had made under the Freedom of Information Act and produced a transmittal letter from the EEOC to the DCOHR dated October

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in A.2d                                                                    Page 7
Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.)
**(Cite as: Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.))**

12, 2001. The Court is persuaded that at the time Pullen filed his opposition to the defendants' motion to dismiss he did not have access to this proof of the EEOC's cross-filing of his EEOC complaint with the DCOHR. Under the circumstances, the Court concludes that it should reach the merits of Pullen's motion for reconsideration. *See* Super. Ct. Civ. R. 60(b)(2).

On the merits, the Court finds that Pullen's administrative complaint filed with the EEOC on October 2, 2001 and cross-filed with the DCOHR on October 12, 2001 is still "pending" before the DCOHR within the meaning of D.C.Code § 2-1403.16(a). Specifically, the Court finds that the DCOHR never resolved this cross-filed complaint on its merits or dismissed it for administrative convenience and that Pullen never withdrew this cross-filed complaint from the DCOHR's consideration. In this regard, Pullen did withdraw the administrative complaint that he had filed directly with the DCOHR. But materials in the record indicate clearly that the two complaints had different docket numbers at the DCOHR and that Pullen's withdrawal applied only to No. 02-011-P(CN), the complaint he had filed directly with the DCOHR. Under the analysis adopted by the Court in its order of June 9, 2003, the limitations period for Counts V and VII of the third amended complaint therefore has been tolled since October 12, 2001, and the claims alleged in those counts-arising from Pullen's discharge on September 6, 2001-are not barred by the one-year statute of limitations period set forth in D.C.Code § 2-1403.16(a).

*\*8 Accordingly, it is this *24* day of July 2003

ORDERED, that Pullen's motion is GRANTED. The dismissal of Counts V and VII of the third amended complaint entered by written order dated June 9, 2003 is hereby vacated, and Counts V and VII of the third amended complaint are hereby reinstated.[FN2]

> FN2. Pullen filed a notice of appeal on July 8, 2003, presumably to challenge the

Court's order of June 9, 2003. The Court assumes that Pullen will withdraw his notice of appeal in light of the Court's ruling herein and that Pullen will notify the Court in the event that jurisdictional requirements necessitate the reissuance of this order following the dismissal of the appeal.

D.C. Super.,2003.
Vitikacs v. American Legion
Not Reported in A.2d, 2003 WL 22004935 (D.C.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN AIELLO
15316 Jordans Journey Drive
Centreville, Virginia 20120,

        Plaintiff,

v.

                                     Civil Action No. 08-CV-00130 (EGS)

NOVARTIS PHARMACEUTICALS CORP.
One Health Plaza
East Hanover, New Jersey 07936,

        Defendant.

# **<u>EXHIBIT C</u>**



Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

**H**
Washington Metropolitan Area Transit Authority v.
Quik Serve Foods, Inc.
D.D.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Plaintiff,
v.
QUIK SERVE FOODS, INC., Defendant.
Quik Serve Foods Inc., Plaintiff,
v.
Washington Metropolitan Area Transit Authority,
Defendant.
**Civil Nos. 04-838(RCL), 04-687(RCL).**

April 28, 2006.

Edward John Maginnis, Washington Metropolitan
Area Transit Authority Office of General Counsel,
Washington, DC, for Plaintiff.
Joseph Armand Artabane, Artabane & Belden, PC,
Mark Leonard Shaffer, Shaffer, Bock & Ant-
onoplos, PLLC, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

ROYCE C. LAMBERTH, District Judge.
*1 This matter comes before the Court on Washing-
ton Metropolitan Area Transit Authority's
("WMATA") motion [18] to dismiss, or in the al-
ternative, motion for summary judgment in Civil
Action No. 04-687 and motion [18] to dismiss, or in
the alternative, motion for summary judgment in
Civil Action No. 04-838. Quik Serve Foods, Inc.
("Quik Serve") filed a Complaint against WMATA
in this Court on April 27, 2004 for breach of con-
tract and tortious interference with prospective
business advantage, and for injunctive relief. (Case
No. 04-687) On May 4, 2004 WMATA filed a
Complaint for Possession of Real Estate in the
Landlord and Tenant Branch of the Civil Division
of the Superior Court for the District of Columbia
(L & T No. L 15842-04). On May 25, 2004, Quik

Serve removed WMATA's pending landlord and
tenant action from Superior Court to this Court as
Case No. 04-838.Subsequently, both cases were
consolidated in this Court by Order dated July 26,
2004. Upon consideration of WMATA's motions,
the opposition thereto, the reply brief, the applic-
able law, and the entire record herein, the Court
concludes that both WMATA's motions will be
granted.

### BACKGROUND

On or about August 4, 1998, WMATA entered into
a commercial ground lease ("Lease") with Ouik
Serve for Lots 4, 12-18, 23, 808-813 and 827,
Square 416, located at 8th Street and Florida Aven-
ue, NW, Washington, D.C. (Compl.¶ 21.) The
Lease required Quik Serve to conduct environment-
al and soil testing and engineering studies; obtain
surveys and title insurance; and secure permits, li-
censes, and approvals during the due diligence peri-
od, or the first 120 days after the execution of the
lease. (Lease ¶ 2.1.) Thereafter, Quik Serve would
build a Checker's restaurant and drive-thru during
the development period, or the 210 days following
the due diligence period. (Lease ¶ 2.2.) The Lease
reserved to Quik Serve to right to purchase the
leased premises at $475,000 within two years from
the execution of the lease, and thereafter at the fair
market value. (Lease ¶ 21.1.) In addition, Quik
Serve preserved the right of first refusal.

If at any time during the Term of this Lease,
WMATA should receive from any third party an
acceptable solicited or unsolicited offer to purchase
or otherwise acquire the Leased Premises (Square
416) or any WMATA owned property in Squares
393 and 417 in the District of Columbia, WMATA
shall submit a written copy of such offer to [Quik
Serve], and shall provide [Quik Serve] a sixty (60)
day period within which to elect to meet such offer.

(Lease ¶ 21.1.) The Lease stated that the term of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))

lease was to begin after the end of the development period. (Lease ¶ 2.4.) At the earliest, the term of the Lease would occur 330 days after its execution, or July 1, 1999.

On September 19, 1998, WMATA sold square 417 to People's Improvement Corporation ("PIC"). (Mot.Prelim.Inj.¶ 8.) In 2003, WMATA entered into negotiations with Howard University for the sale WMATA property in Square 393, but the negotiations did result in a conveyance. (Mot. Dismiss 5.) Quik Serve alleges that on April 7, 2000, it notified WMATA that it exercised its option to purchase the Leased Premises. (Compl.¶ 35.) WMATA contends that the exercise of this option was deficient. In May 2001, Quik Serve requested from WMATA permission to use the Leased Premises as a temporary parking lot. (Compl.¶ 39.)

*2 On May 7, 2003, nearly five years after the execution of the lease, WMATA served Quik Serve with a Notice of Default stating that Quik Serve had failed to develop the property pursuant to the terms of the Lease. (Compl. ¶ 44, Opp'n Mot. Prelim. Inj. at 5.) In response, Quik Serve offered to cure the default by obtaining permits, testing, and title insurance. (Mot.Prelim.Inj.Ex.17.) WMATA gave Quik Serve 120 days to cure the default, ending September 8, 2003 with the expectation that the restaurant would be completed 210 days later, on April 5, 2004. (Mot.Prelim.Inj. ¶ 28 .) Quik Serve notified WMATA on October 10, 2003 that Quik Serve would finish the permitting process by December. (Mot.Prelim.Inj.¶ 30.) In February 2004, WMATA learned that Quik Serve had not filed the necessary applications for permits with the Office of Permits. (Mot.Prelim.Inj.¶ 37.) Shortly thereafter, WMATA noticed Quik Serve of its intent to terminate the lease. (Mot.Prelim .Inj. ¶ 43). On April 30, 2004 WMATA terminated the lease. (Mot.Prelim.Inj.¶ 44.)

On April 27, 2004, Quik Serve filed Case No. 04-687 in this Court. WMATA filed a landlord and tenant action for possession of the Leased Premises on May 4, 2004 in the Superior Court of the District of Columbia. On May 25, 2004, Quik Serve removed WMATA's pending landlord and tenant action from Superior Court to this Court as Case No. 04-838.The cases were consolidated by order of this Court on July 6, 2004. (Dkt.# 5) On December 27, 2004 WMATA filed a motion for partial summary judgment on Counts I and II, and the punitive damage component of Count V, of the complaint in Case No. 04-687 filed by Quik Serve. Subsequently, the Court granted WMATA's motion by Order dated September 22, 2005. (Dkt.# 13) On October 14, 2005 Quik Serve moved to amend its Complaint to delete the two dismissed breach of contract claims and the dismissed claim for punitive damages and add anticipatory breach of contract, violation of the covenant of good faith and fair dealing, and racial discrimination claims against WMATA. (See Amended Compl.) On the same day, Quik Serve also filed a motion for preliminary injunction while WMATA filed this motion to dismiss or in the alternative, for summary judgment on October 25, 2005.

Quik Serve's Complaint alleges seven counts. Counts I and II of the Complaint allege breach of contract, namely, breach of Quik Serve Foods Inc.'s right of first refusal. Count III asserts anticipatory breach of contract and seeks injunctive relief. Count IV claims breach of the implied covenant of good faith and fair dealing. Count V alleges tortious interference with prospective business advantage, and Count VI, alleges unlawful race discrimination under 28 U.S.C. § 1981 (2000).[FN1] The Court will consider each count in turn.

> FN1. Quik Serve also sought to enjoin WMATA from enforcing the notice of default in Count VII of the complaint. WMATA rightly points out that by removing the action from Superior Court, Quik Serve has effectively stayed the eviction action. By failing to respond, Quik Serve has conceded the point, therefore, the Court will not address Count VII.

## DISCUSSION

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

## A. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a plaintiff has properly stated a claim upon which relief can be granted. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). In deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the non-moving party. *Scheuer,* 416 U.S. at 236. Therefore a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley,* 355 U.S. at 45-46.

**\*3** Under Rule 56, a court must grant summary judgment if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact is one that is determinative of the claim or a defense and could thus affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All inferences drawn from the record must be viewed in light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), and any factual dispute that does not constitute a genuine issue of material fact is immaterial for summary judgment purposes, *Anderson,* 477 U.S. at 248. The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see id.* at 325 ("The burden on the moving party may be discharged by [demonstrating] ... that there is an absence of evidence to support the nonmoving party's case."). The non-moving party must support its position by providing more than "a scintilla of evidence"; the quantum of evidence must be such that a reasonable jury could find for the nonmoving

party. *Anderson,* 477 U.S. at 252. The movant is consequently entitled to a judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## B. Count I: Breach of the Right of First Refusal for Square 417

Quik Serve alleges that WMATA breached the Lease by not permitting Quik Serve to exercise its right of first refusal prior to selling Square 417 to PIC. WMATA avers that Count I is deficient because the offer and sale of the parcel in question occurred before WMATA was required to comply with the first refusal requirement. The Court agrees with WMATA. The Lease did not immediately grant to Quik Serve the ability to exercise this right. Indeed, the Lease only permitted Quik Serve to exercise its right of first refusal after the commencement of the term of the contract which did not begin until at least July 1, 1999. Since WMATA sold square 417 on September 14, 1998, Quik Serve did not have the legal right to exercise its right of first refusal. Therefore, WMATA did not breach the right of first refusal as it pertains to Square 417. Accordingly, Count I of the complaint will be dismissed.

## B. Count II: Breach of the Right of First Refusal for Square 393

Quik Serve contends that WMATA violated Quik Serve's right of first refusal for Square 393 when WMATA refused to offer the parcel to Quik Serve. WMATA contends that Count II should be dismissed because the condition precedent never occurred and there was no injury in fact. The Court agrees. WMATA never received an acceptable offer that would trigger the right of first refusal.

**\*4** In the area of contract interpretation, the existence of a genuine issue of material fact generally

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 **(EGS)**

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

turns on whether or not the contract is ambiguous. *See, e.g., Young v. Delaney,* 647 A.2d 784, 815 (D.C.1994). Summary judgment is appropriate "when the agreement is unambiguous and where there is no question as to the parties' intent."*Bagley v. Found. for the Pres. of Historic Georgetown,* 647 A.2d 1110, 1113 (D.C.1994) (citing *Holland v. Hannan,* 456 A.2d 807, 814-15 (D.C.1983)). Whether a contract is ambiguous is a question of law for the court. *Holland,* 456 A.2d at 815. A contract is not rendered ambiguous merely because the parties disagree over its proper interpretation. *Id.* Instead, a contract is ambiguous "when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings."*Burbridge v. Howard Univ.,* 305 A.2d 245, 247 (D.C.1973). If there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context of the circumstances surrounding its making, the contract is ambiguous. *See Morgan v. American Univ.,* 534 A.2d 323, 330 (D.C.1987). The choice among reasonable interpretations of an ambiguous contract is for the fact-finder to make, based on the evidence presented by the parties to support their respective interpretations. *Howard Univ. v. Best,* 484 A.2d 958, 966 (D.C.1984).

Examining the clause in question in light of the Lease as a whole, the Court finds that the language in question is unambiguous. Article 21 states:

Tenant shall have the right to purchase the Leased Premises at the appraised fair market value of [$475,000.00] for a period of two years from the Date of Lease Execution.... If at any time during the Term of this Lease, WMATA should receive from any third party an acceptable solicited or unsolicited offer to purchase or otherwise acquire the Leased Premises (Square 416) or any WMATA owned property in Squares 393 and 417 in the District of Columbia, WMATA shall submit a written copy of such offer to Tenant, and shall provide Tenant a sixty (60) day period within which to elect

to meet such offer.

The contract is clear that every offer would not necessarily trigger the right of first refusal. Rather, only an offer that met a certain standard would activate WMATA's duty to give Quik Serve the opportunity to match the offer. Furthermore, the language and structure of the contract indicates that this standard is not objective. The "right of first refusal" is contained in a portion of the Lease that discusses the rights and obligations of WMATA. Such placement indicates that the acceptability of an offer was to be judged by WMATA. This becomes evident when the "right of first refusal" is contrast with the "option" portion of the Lease. In the case of the latter, the option to purchase focuses solely on the rights of Quik Serve. It is clear Quik Serve was to have a limited irrevocable option to purchase Square 416, but the option to purchase Squares 393 and 417 was conditioned upon WMATA's desire to sell such land. *See*SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 67:85 (4th ed. 1993) ("The 'right of first refusal' or 'preemption' is conditioned upon the willingness of the owner to sell.")

**\*5** Moreover, the fact that WMATA did not sell Square 393 evinces the absence of a breach. If WMATA had sold the parcel and not informed Quik Serve of an offer, a breach of the right of first refusal would have occurred. However, WMATA did not sell the parcel. It is nearly impossible for Quik Serve to allege a breach, if the event that would ordinarily create such a breach did not occur. Since WMATA did not convey Square 393, nor received an offer that it considered suitable, WMATA did not breach Quik Serve's right of first refusal.

**D. Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing**

As to Count IV, Quik Serve asserts that WMATA breached the implied covenant of good faith by soliciting proposals to develop Squares 393 and 417.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

Page 5

WMATA alleges that the claim for breach of the implied covenant of good faith and fair dealing is not an independent cause of action because other counts incorporate this claim. The Court agrees with WMATA.

The District of Columbia recognizes an independent cause of action for a breach of the implied covenant of good faith. *Allworth v. Howard University,* 890 A.2d 194, 201 (D.C.2006). A party may bring suit for breach of the implied covenant when other party to the contract "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party."*Id.* However, the implied covenant may not override the express provisions of the contract. *Television Capital Corp. of Mobile v. Paxson Communications Corp.,* 894 A.2d 461, 2006 WL 647978, at * 4 (D.C.2006). Additionally, breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under established cause of action. *See Jacobson v. Oliver,* 201 F.Supp.2d 93, 98 n. 2 (D.D.C.1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.' "). The implied covenant of good faith and fair dealing merely prohibits parties from interfering with the performance and other obligations under a contract.

First, Quik Serve claims that WMATA acted with the requisite bad faith by selling Square 417 to PIC, refusing to sell Square 393 to Quik Serve, and requesting proposals for development of Squares 393 and 416. These claims of bad faith are identical to the claims in Counts I and II which allege WMATA sold the property without permitting Quik Serve to exercise its right of first refusal. The claim also mirrors Count III which claims that WMATA is about to breach the contract by requesting proposals to develop the land. Quik Serve is attempting to get two bites at the same apple. Second, WMATA's conduct did not rise to the level of bad faith. As discussed in Sections B, C, and F, WMATA's ac-

tions are expressly permitted by the Lease. Since the implied covenant of good faith cannot override the provisions of a contract, WMATA's conduct was not in bad faith. Since Quik Serve's allegation of bad faith is identical to other established causes of actions within the complaint, the claim for breach of the implied covenant of good faith and fair dealing cannot survive. Furthermore, WMATA's conduct was permissible under the Lease, therefore, Quik Serve cannot demonstrate the requisite bad faith.

**E. Count V: Tortious Interference with Prospective Business Advantage**

*6 Quik Serve contends that WMATA interfered with Quik Serve's attempts to develop, purchase, and resell the Leased Premises. WMATA asserts that these acts were discretionary, and therefore WMATA enjoys sovereign immunity. However, the Court need not address the sovereign immunity question; instead, the Court dismisses the action under Rule 12(b)(6) because Quik Serve has failed to plead facts that, if true, would created a prima facie case of tortuous interference.

First, as matter of law, a party cannot interfere with its own contract. *See, e.g., Press v. Howard Univ.,* 540 A.2d 733, 736 (D.C.1988). Thus, WMATA's decision not to amend the Lease is not actionable under the doctrine of tortious interference. Likewise, WMATA's failure to sell the Leased Premises to Quik Serve is not actionable under this legal doctrine.

To establish a prima facie case of tortious interference with regard to Squares 393 and 417 Quik Serve must allege: (1) the existence of a valid business relationship or expectancy, (2) knowledge of that relationship or expectancy, (3) intentional interference inducing or causing termination of the relationship or expectancy, and (4) resulting damage. *See Bennett Enters., Inc. v. Domino's Pizza, Inc.,* 45 F.3d 493, 499 (D.C.Cir.1995). A valid business expectancy is not grounded in an existing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

Page 6

contract, but is a commercially reasonable anticipation of a future business relationship. *See McManus v. MCI Comm'ns Corp.,* 748, A.2d 949, 957 (D.C.2000). A valid business expectancy requires a probability of future contractual or economic relationship and not a mere possibility. *See Carr v. Brown,* 395 A.2d 79, 84 (D.C.1978). Additionally, plaintiff must demonstrate more than a general intent or knowledge that the conduct will interfere; plaintiff must demonstrate strong intent to disrupt the business expectancy through egregious conduct. *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.,* 383 F.Supp.2d 32, 45 (D.D.C.2005) (considering libel, slander, physical coercion, fraud, misrepresentation, and disparagement as examples of conduct demonstrating strong intent to interfere).

Quik Serve has not alleged facts that, if true, would allow the Court to infer the existence of a prima facie case of tortious interference. It has not pled sufficient facts to demonstrate the probability of future business expectancy, but merely alleges that it was in discussions with Howard University to sell the Leased Premises, a plot of land which Quik Serve did not even own. The fact that Howard University made inquiries into purchasing a plot of land that Quik Serve did not own demonstrates that the future business relationship was speculative and not probable. Moreover, Quik Serve has not alleged any conduct by WMATA that would imply egregious conduct. At one time Howard University discussed the purchase of land with Quik Serve; later it discussed the purchase of a different plot of land with WMATA. This fact does not demonstrate egregious conduct and Quik Serve's conclusory allegations are insufficient to fill the void. Since Quik Serve has failed to plead the shadow of a prima facie case of tortious interference, Count V is dismissed.

### F. Count VI: Race Discrimination

**\*7** Quik Serve contends that WMATA's failure to amend the lease to allow Quik Serve to temporarily use the Leased Premises as a parking lot constituted race discrimination in violation of 42 U.S.C. § 1981 (2000). Quik Serve, a minority-owned enterprise, alleges that WMATA allowed similarly situated white-owned business organizations to temporarily use vacant lots for temporary parking. WMATA responds that the 11th Amendment confers immunity upon WMATA. The Court agrees with WMATA's immunity response.

As the parties are well aware, WMATA enjoys 11th Amendment immunity from suits arising under federal law. *See Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.,* 402, F.Supp.2d 198, 203 (D.D.C.2005) (Lamberth, J.). The question is whether Congress abrogated the states' 11th Amendment immunity for Section 1981 claims. The text of § 1981 does not indicate clear and explicit Congressional intent to abrogate state sovereign immunity.[FN2]Moreover, Quik Serve has not directed the Court to any legislative history what would indicate such intent.

> FN2.§ 1981 reads, in relevant part:
>
> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings or the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in F.Supp.2d                                                           Page 7
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

and conditions of the contractual relationship.

(a) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Rather, Quik Serve alleges that the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071, overruled the Supreme Court's decision in *Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 731-732 (1989) which held that § 1983 was the sole remedy against state entities for violations of the rights contained in § 1981 and that § 1981 cannot, on its own, provide for an independent cause of action against governmental entities. Quik Serve relies exclusively on the Ninth Circuit's decision in *Fed'n of African-American Contractors v. City of Oakland,* which found a private cause of action against state actors. 96 F.3d 1204, 1212 (9th Cir.1996). The court inferred from "impairment under color of State law" that Congress intended to create a an additional remedy to a § 1983 claim.

However, neither the amendments to the statute nor the legislative history of the Civil Rights Act of 1991 indicate clear Congressional intent to overrule *Jett.See Dennis v. Country of Fairfax,* 55 F.3d 151, 156 n. 1 (4th Cir.1995) (indicating that the amendment to § 1981 was meant to codify *Runyon v. McCrary,* 427 U .S. 160 (1976), and not overrule *Jett); accord Butts v. County of Volusia,* 222 F.3d 891, 894 (11th Cir.2000)."The judicial power to imply or create remedies ... should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute."*Jett,* 491 U.S. at 732. To abrogate states' sovereign immunity, Congress must express its clear intention to do so, and it may only do so pursuant to a valid exercise of power. *See Edelman v. Jordan,* 415 U.S. 651, 673 (1974). Since Congress did not indicate a desire to overrule *Jett,* or that it wished to create a private right of action against

state actors outside of § 1983, this Court declines to discover such a right.

### G. Count III: Anticipatory Breach of Contract, Preliminary Injunction

*8 Quik Serve alleges that WMATA anticipatorily breached the contract by requesting proposals to develop the Leased Premises and Squares 393 and 416 after the commencement of this litigation. The Court disagrees. First, the Lease has been terminated. The parties are now before the Court to determine whether the termination was invalid and whether any remedies flow therefrom. The Court doubts whether the action for anticipatory breach of contract is proper. An anticipatory breach occurs when a promisor repudiates by indicating that when the time for performance arises, it will not fulfill its promise. *See Reiman v. Int'l Hospitality Group, Ltd.,* 614, A.2d 925, 928 (D.C.1992). At that moment, the promisee has two options: wait until the breach and then sue, or treat the repudiation itself as a breach and sue for damages. *See generally*23 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 63:28 (4th ed.1993). WMATA terminated the lease and commenced eviction proceedings. WMATA's action is more than a mere indication that it will fulfill its end of the bargain when the time for performance comes due; rather, it is a breach, in and of its own right. Quik Serve's claim is for actual, not anticipatory, breach of contract.

Accordingly, Count III shall be dismissed. The Court need not address Quik Serve's claim for a preliminary injunction and their accompanying motion because it has become moot.

### CONCLUSION

For the foregoing reasons, the Court grants both WMATA's motions to dismiss, or in the alternative, motion for summary judgment in Case No. 04-687 and Case No. 04-838.Furthermore, Quik Serve's motion for preliminary injunction will be denied as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in F.Supp.2d                                                                Page 8
Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1147933 (D.D.C.))**

moot.

A separate Order shall issue this date.

D.D.C.,2006.
Washington Metropolitan Area Transit Authority v.
Quik Serve Foods, Inc.
Not Reported in F.Supp.2d, 2006 WL 1147933
(D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN AIELLO
15316 Jordans Journey Drive
Centreville, Virginia 20120,

        Plaintiff,

v.

NOVARTIS PHARMACEUTICALS CORP.
One Health Plaza
East Hanover, New Jersey 07936,

        Defendant.

Civil Action No. 08-CV-00130 (EGS)

# **EXHIBIT D**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.))**

**c**
Coates v. Law School Admission Council
D.D.C.,2005.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Josiah COATES, Plaintiff,
v.
LAW SCHOOL ADMISSION COUNCIL, Defendant.
No. Civ.A. 105CV0641JDB.

Oct. 25, 2005.

Josiah Coates, Washington, D.C., plaintiff, pro se.
Caroline M. Mew, Fulbright & Jaworski L.L.P., Washington, D.C., for defendant.

*MEMORANDUM OPINION*

BATES, J.
*1 Pro se plaintiff Josiah Coates brings this action against the Law School Admission Council (LSAC) for defamation. Currently before the Court is defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court will grant defendant's motion.

*BACKGROUND*

The following facts are alleged in plaintiff's complaint. Plaintiff took the Law School Admissions Test (LSAT) on February 12, 2005 at the American University School of Law in Washington, D.C. On March 4, 2005 plaintiff received his score and concluded that his test was incorrectly scored and was "significantly lower" than the correct score. Compl. at 1. That day, plaintiff spoke with LSAC representatives three times. *Id.* During the third conversation, he was informed that a review of his test score would not be conducted. *Id.* In keeping with LSAC policy, plaintiff's score will remain on file for five years. *Id.* Plaintiff is suing for damages equal to the

amount that he estimates he will lose in wages due to the unlikelihood that he will now gain admission to a competitive law school and subsequently practice law. Compl. at 2.

*LEGAL STANDARD*

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *seealsoHaynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987). The Federal Rules of Civil Procedure require only that a complaint contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."*Dura Pharm. Inc. v. Broudo,* --- U.S. ----, ----, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (quoting *Conley,* 355 U.S. at 47);*seealso*Fed.R.Civ.P. 8(a)."Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant Cty. Narcotics and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000). Conclusory legal and factual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 2
Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.))

allegations, however, need not be considered by the court. *Domen v. Nat'l Rehab. Hosp.,* 925 F.Supp. 830, 837 (D.D.C.1996) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

### ANALYSIS

**\*2** Plaintiff alleges that defendant's publication of his incorrectly-graded LSAT score is defamatory because the score is a false statement that injures him in the pursuit of his desired trade.[FN1] Defendant contends that plaintiff fails to state a claim upon which relief can be granted because an LSAT score is not capable of having a defamatory meaning and plaintiff presents no evidence showing that his score was published to a third party. Further, defendant argues that the motion to dismiss should be granted as conceded because plaintiff filed his memorandum in opposition to the motion after the deadline set forth in Local Civil Rule 7(b).

> FN1. Plaintiff does not clearly state a specific cause of action but appears to raise a claim for defamation when he refers to "defendant's libel actions." *See* Compl. at 2. Libel is the written publication of defamatory material. Whether that written publication constitutes defamation is determined by the elements set forth in the prima facie case for defamation. *See* Restatement (Second) of Torts §§ 558, 568(c) (1977). Thus, the Court refers to the cause of action as defamation.

Local Civil Rule 7(b) states that if a memorandum in opposition to a motion "is not filed within the prescribed time, the court *may* treat the motion as conceded." Local Civ. R. 7(b) (emphasis added). Because plaintiff is pro se, the 13-day delay was not exceptionally egregious, and there is no evidence that suggests the delay was intentional, the Court declines to treat the motion to dismiss as conceded.

To make a prima facie case for defamation under District of Columbia law, a plaintiff must allege facts showing:

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement is actionable as a matter of law irrespective of special harm, or that its publication caused the plaintiff special harm.

*Crowley v. N. Am. Telecomm. Ass'n,* 691 A.2d 1169, 1172 n. 2 (D.C.1997) (internal citations omitted); *Marsh v. Hollander,* 339 F.Supp.2d 1, 5 (D.D.C.2004). Defamation claims must be pleaded with particularity and specify the "time, place, content, speaker and listener of the alleged defamatory material." *Wiggins v. Dist. Cablevision, Inc.,* 853 F.Supp. 484, 494 (D.D.C.1994) (internal citations omitted); *see Hoffman v. Hill and Knowlton, Inc.,* 777 F.Supp. 1003, 1005 (D.D.C.1991) (stating that "the time and place of the publication should be specifically stated in the complaint").[FN2]

> FN2. Although defamation complaints must be stated with particularity, this Circuit has ruled that heightened pleading standards do not apply in defamation actions. *See Croixland Props. Ltd. P'Ship v. Corcoran,* 174 F.3d 213, 215 n. 2 (D.C.Cir.1999) (citing Fed.R.Civ.P. 9).

The Court concludes that a low LSAT score is not capable of having a defamatory meaning, and plaintiff therefore fails to state a claim that fulfills the first element of the prima facie case for defamation. A statement is defamatory if it "tends to injure plaintiff in his trade or lower him in the estimation of the community or subject him to scorn, ridicule, shame, contempt or embarrassment." *Moss v. Stockard,* 580 A.2d 1011, 1023 (D.C.1990) (internal citations omitted); *Marsh,* 339 F.Supp.2d at 9. Furthermore, "an allegedly defamatory remark must be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 08 CV 00130 (EGS)

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.))**

more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous or ridiculous.' "*Howard Univ. v. Best,* 484 A.2d 958, 989 (D.C.1984) (quoting *Johnson v. Johnson Publ'g Co.,* 271 A.2d 696, 697 (D.C.1970)). The low LSAT score at issue here has none of the foregoing characteristics.

**\*3** To begin with, plaintiff's low LSAT score does not injure him in his trade. Plaintiff does not allege that he is currently employed in a trade in which a low LSAT score would injure him professionally. Instead, he merely states that, if he remains at his "current job," Compl. at 2, instead of going to law school, he will have a lower salary for years to come. That may well be, but plaintiff does not allege that the publication of his score has resulted in the loss of his current job, a reduction in salary, or inability to obtain a promotion. *SeeMarsh,* 339 F.Supp.2d at 9 (holding that a publication was not capable of having a defamatory meaning because it would "not tend to injure [p]laintiff in his profession, because it does not accuse plaintiff of any wrongful act or imply professional incompetence"). Thus, plaintiff has not adequately alleged that his low LSAT score is defamatory.

Plaintiff also fails to allege facts showing that his LSAT score has subjected him to scorn, ridicule, shame, contempt or embarrassment. A low test score may be personally discouraging, but it is unfortunately a fairly common occurrence. The test is notoriously difficult. A low score may subject the test-taker to personal disappointment, but this does not rise to the level of scorn, ridicule, shame, contempt or embarrassment. Plaintiff has presented no facts to the contrary-he has not alleged that his score reached an audience that reacted in an adverse manner or treated him poorly as a result. In sum, a test score standing alone is not reasonably capable of having a defamatory meaning and cannot reasonably be understood in any defamatory sense. *SeeRuf v. Am. Broad. Co., Inc.,*1999 U.S. Dist. LEXIS 1092 \*20 (D.D.C. Jan. 29, 1999) (unpublished opinion) (holding that, as a matter of

law, words of sympathy were capable neither of having a defamatory meaning nor of being understood in any defamatory sense).

Plaintiff has also failed to allege any facts to show that defendant published his score to a third party, the second element of the prima facie defamation test. There is no evidence that suggests the score was communicated to anyone other than plaintiff himself. Because defamation complaints must be pleaded with particularity, and because plaintiff has failed to identify an audience that received the publication, he has therefore failed to state a claim for defamation. *SeeWiggins,* 853 F.Supp. at 494-95 (granting summary judgment in a defamation claim in which plaintiff failed to specify to whom the allegedly defamatory statements were made).

Plaintiff's complaint therefore fails to allege facts showing that his LSAT score could be understood as defamatory and furthermore presents no facts that his score was published to a third party. The Court thus concludes that the complaint does not satisfy the first two elements of a prima facie defamation case and there is thus no need for the Court to address the third and fourth elements. Accordingly, plaintiff has not stated a claim upon which relief can be granted.

### CONCLUSION

**\*4** For the foregoing reasons, the Court grants defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A separate order will be issued on this day.

D.D.C.,2005.
Coates v. Law School Admission Council
Not Reported in F.Supp.2d, 2005 WL 3213960 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN AIELLO,

               Plaintiff,

v.

NOVARTIS PHARMACEUTICALS CORP.,

               Defendant.

Civil Action No. 08-CV-00130 (EGS)

## PROPOSED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS V, VI, VII AND VIII OF PLAINTIFF'S FIRST AMENDED COMPLAINT

On motion of Defendant Novartis Pharmaceuticals Corporation, and for good cause shown, it is hereby ORDERED that Counts V, VI, VII and VIII of Plaintiff's First Amended Complaint be dismissed.

DATED: _____

_____
Emmet G. Sullivan
United States District Court Judge

To:    Lisa Alexis Jones
       Lisa Alexis Jones, PLLC
       1200 G Street, N.W.
       Suite 800
       Washington, D.C. 20005
       Counsel for Plaintiff

       David M. Hernandez
       Vedder Price P.C.
       875 15th Street N.W.
       Suite 725
       Washington, D.C.  20005

       Thomas M. Wilde
       Sara J. Kagay
       Vedder Price P.C.
       222 North LaSalle Street
       Suite 2600
       Chicago, IL  60601-1003
       Counsel for Defendant