## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRIAN AIELLO,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>NOVARTIS PHARMACEUTICALS<br>CORPORATION,<br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 08-0130 (EGS)<br>)<br>)<br>)<br>)<br>)<br>) |

### <u>MEMORANDUM OPINION</u>

Plaintiff Brian Aiello, a white male over 40 who was formerly employed by Novartis Pharmaceuticals Corporation ("Novartis"), claims that his employer discriminated against him on the basis of gender and age when he was terminated in January 2007, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* He also claims that his termination violated an employment contract, and alleges a common law breach of contract claim. Defendant has moved for summary judgment on all of plaintiff's claims. Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for the reasons set forth below, the Court will **GRANT** defendant's motion for summary judgment.

## I.   BACKGROUND

At all times relevant to this case, plaintiff was employed by Novartis as an Area Sales Manager ("ASM").  Def.'s Statement of Material Facts ("Def.'s Facts") ¶ 1; Pl.'s Statement of Material Facts ("Pl.'s Facts") ¶ 44.  As an ASM, plaintiff managed a team of approximately ten sales representatives who promoted Novartis pharmaceutical products to physicians in parts of Pennsylvania, Delaware, Maryland, the District of Columbia, and Virginia.  Def.'s Ex. A, Deposition of Brian Aiello ("Aiello Dep.") 21, 25-26, 37-41. Plaintiff's job required him to work personally with sales representatives on a regular basis, including on field rides, during which he accompanied the representative in his or her car for physician visits, and for educational or dinner programs.  Aiello Dep. 41-45, 51-52.  Prior to the events at issue in this case, plaintiff had no disciplinary history at Novartis.  Pl.'s Facts ¶ 43.  Plaintiff was 48 years old at the time of his termination.  Pl.'s Facts ¶ 41.

### A.   The Holland Allegations

In 2004, a group of female employees filed a class action lawsuit ("the *Velez* lawsuit") against Novartis alleging sex discrimination against the company.  *Amy Velez, et al. v. Novartis Pharmaceuticals Corp.*, Case No. 04-9194, Southern

District of New York.[1]  Def.'s Facts ¶ 7.  On June 3, 2005, the
*Velez* lawsuit was amended and plaintiff was identified by class
member Jaime Holland, a sales representative plaintiff supervised
prior to her resignation from Novartis in August 2004.  Def.'s
Ex. I, *Velez* Second Amended Compl.  In a declaration dated May
25, 2005 in connection with the *Velez* lawsuit, Holland alleged
that plaintiff had sexually harassed her by, *inter alia*,
"constantly ma[king] offensive, sexually explicit comments about
women," including employees he supervised.  Def.'s Ex. B, First
Declaration of Jaime Holland (First Holland Decl.) ¶ 9.
Specifically, Holland alleged plaintiff "discussed a newly hired
female sales representative and described certain physical
attributes which helped her be selected for the job."  First
Holland Decl. ¶ 9.  Holland also alleged plaintiff "showed [her]
sexually offensive material on his computer" and "made sexual
jokes."  Holland Decl. ¶ 9.

On August 25, 2005, plaintiff met with Sharon Larrison, his
supervisor, and Aaron Gelb, an attorney representing Novartis in
the *Velez* lawsuit.  Pl.'s Facts ¶ 55.  During the meeting, Gelb
told plaintiff the company was on his side and would support him

---

[1] The Court takes judicial notice that the parties have
reached a preliminary settlement in *Velez* under which Novartis
will pay as much as $152.5 million to class members and spend an
additional $22.5 million to improve its personnel policies.  *See*
*Velez*, Case No. 04-9194, Joint Motion to Preliminarily Approve
Settlement Agreement, Doc. No. 294; Order Preliminarily Approving
Settlement Agreement, Doc. No. 295.

during the lawsuit.  Pl.'s Facts ¶ 56.  Plaintiff admitted he had received inappropriate images on his laptop that had been sent from others, but said he never showed them to Holland.  Pl.'s Facts ¶ 57.  Gelb did not ask plaintiff about any of the other sexual harassment allegations Holland had made.  Pl.'s Facts ¶ 57.  Until his termination, plaintiff was never disciplined about conduct alleged by Holland in the *Velez* lawsuit.  Pl.'s Facts ¶ 58.[2]

## B.    The Emerson Allegations

On June 1, 2006, Beth Emerson, an ASM who was a peer of plaintiff's but did not work with him directly, complained to Associate Director of Human Resources RoseAnn Schwerdt that plaintiff had engaged in inappropriate conduct.  Def.'s Ex. C, Deposition of RoseAnn Schwerdt ("Schwerdt Dep.") 24-26.  Emerson claimed that she was seated next to plaintiff, whom she had never met before, at a dinner during a meeting in San Francisco in

---

[2] In October 2005, Holland executed another declaration in the *Velez* matter.  Holland alleged, and plaintiff admitted, that she had seen him at a restaurant while she attended a work related dinner and plaintiff angrily told her he would see her in court.  Def.'s Ex. B, Second Declaration of Jaime Holland (Second Holland Decl.) ¶¶ 8-9; Aiello Dep. 144 (admitting words to that effect).  Plaintiff stayed in the restaurant throughout the evening, drinking.  Second Holland Decl. ¶ 11; Aiello Dep. 135, 142. Eventually, while plaintiff, Ms. Holland, and her co-workers were still in the restaurant, plaintiff shouted "Jaime Holland is suing Novartis! Jaime Holland is suing Novartis!"  *Id.* ¶ 12; Aiello Dep. 145.  Novartis counsel interviewed plaintiff about these supplemental allegations in October 2005, but the record contains no evidence of any further action by Novartis. Confidential Documents D0804-05, filed in Doc. No. 23 under seal.

April 2006.  Schwerdt Dep. Ex. 2.  She alleged that during the
dinner plaintiff received a phone call from his wife, and then
asked Emerson if she knew what "wife" stood for.  She said no,
and he responded "Washing, Ironing, F*cking, Etc." (hereinafter
"the WIFE joke").  Schwerdt Dep. 24-26, 58-59; Schwerdt Dep. Exs.
2, 3.  He then asked her what she thought of that, and what she
thought of the "F" word.  Schwerdt Dep. Ex. 3.  Emerson alleged
that later during the meal when the waiter was discussing the
catch of the day, plaintiff leaned over and whispered in her ear
"I'll tell you what the catch of the day is for you, baby.  It's
Brian Aiello."  Schwerdt Dep. Ex. 3.  On the bus ride back from
dinner, Emerson claimed plaintiff continually turned around to
stare at her.  When they arrived back at the hotel, he allegedly
asked her several times if she thought he was "cute" and then
suggested they go back to his room and clean out the minibar.
Schwerdt Dep. Ex. 3.  Emerson alleged that during subsequent
meetings in May 2006 he asked her for a hug and repeatedly called
her cell phone.  Schwerdt Dep. Ex. 3.

Schwerdt investigated the complaint.  Def.'s Facts ¶ 14.
She took notes of her telephone call with Emerson, received
Emerson's written notes about the incidents, and spoke with
Stephan Webb, who was then plaintiff's manager, and Larrison.
Schwerdt Dep. 24-27, 33-37, 51-52.  Schwerdt and Larrison then
met with plaintiff on June 21, 2006.  Def.'s Facts ¶ 14.   During

the meeting, Schwerdt and Larrison explained Emerson's allegations to plaintiff.  Pl.'s Facts ¶¶ 80-83.  At the meeting, plaintiff denied harassing or discriminating against Emerson.  He admitted that he may have told the WIFE joke, but said he had likely explained that the "F" in "wife" stood for "fooling around" rather than the obscenity Emerson had alleged.  Aiello Dep. 82.  According to plaintiff, he "denied the rest of Emerson's other allegations."  Pl.'s Facts ¶ 83; *see also* Aiello Dep. 80-91, 98.

After discussing the complaints and his response, Larrison talked with plaintiff about Novartis' Code of Employee Conduct, the need to conduct himself professionally, and Novartis' anti-harassment policy, which prohibited repeated, offensive or unwelcome sexual flirtations, advances and propositions.  Aiello Dep. 92-93; Def.'s Ex. B, Sexual and Other Prohibited Harassment, Code of Employee Conduct.  Larrison told plaintiff that his behavior was unacceptable and could not occur again or he could be terminated.  Aiello Dep. 92-93, 113.  Although plaintiff denied he had done anything wrong, he told Larrison and Schwerdt that he "did not mean to offend Ms. Emerson [sic] if I did," and offered to apologize to her.  Aiello Dep. 95.  Larrison and Schewedt agreed an apology would be appropriate.  Aiello Dep. 96.  Larrison told plaintiff he would also be required to re-take a "Mutual Respect" online training program.  Def.'s Facts ¶ 21.

Toward the end of the meeting, Schwerdt read a memo to plaintiff regarding his conduct.  Pl.'s Facts ¶ 84.  The purpose of the memo was to "summarize recent inappropriate conduct, expectations going forward, and consequences should there be any further or related incidents."  Def.'s Ex. B, June 21, 2006 Memo to Aiello from Larrison (hereinafter "Conduct Memo").  The conduct memo detailed Emerson's complaints and advised plaintiff: "should you demonstrate any subsequent conduct that is deemed to be inappropriate or unprofessional, you will be subject to further disciplinary action up to and including termination of your employment." Conduct Memo; Aiello Dep. 113.  Larrison emailed the conduct memo to plaintiff later the same day; plaintiff immediately deleted it without reading it.  Conduct Memo; Aiello Dep. 111-12.  About two weeks later, plaintiff completed the "Mutual Respect" training and also apologized to Emerson on the phone and in person. Pl.'s Facts ¶ 93. Emerson thanked plaintiff for his apology.  Pl.'s Facts ¶ 93.

### C.   The Fulton Allegations and Resulting Investigation

On July 6, 2006, Tracy Fulton, another former Novartis employee who had previously worked for plaintiff, submitted a declaration in connection with the *Velez* lawsuit.  Def.'s Ex. B, Declaration of Tracy Fulton ("Fulton Decl.").  Unlike Holland, who resigned voluntarily from Novartis, Fulton had been terminated for cause earlier in 2006, following allegations that

she falsified her sales reports.  Pl.'s Facts ¶¶ 67-68;
Deposition of Stephan Webb ("Webb Dep.") at 41-48.  In Fulton's
declaration, she alleged that plaintiff made "offensive and
sexist comments" about her, other female employees at Novartis,
and women in general.  Fulton's allegations regarding plaintiff's
behavior towards her in particular included claims that plaintiff
told her she "should be home cleaning toilets," implied to other
people that they were a couple, told her she was sexy and asked
her what sexual positions she preferred, tried to play "footsie"
with her under the table during a work lunch, and repeatedly
called her and said he would not hang up until she told him she
loved him.  Fulton Decl. ¶¶ 8, 9, 10, 14.

Fulton alleged that plaintiff engaged in offensive conduct
toward other women as well.  For example, she alleged that he
"regularly made inappropriate sexist and racist jokes and
comments to our sales team," "often" told the WIFE joke to her
and other members of the team, asked another female employee
about her weight, commented that he was "excited" when another
female employee was not wearing a bra, and referred to a former
female employee as "that b*tch".  Fulton Decl. ¶¶ 15, 16, 20.

Following the Fulton declaration, and at the request of
Novartis' in-house counsel, outside counsel for Novartis began an
investigation into Fulton's allegations.  Def.'s Facts ¶ 24;
Def.'s Ex. G, Declaration of Aaron Gelb ¶ 4.  As part of the

investigation, counsel interviewed ten current Novartis
employees, reviewed Jaime Holland's deposition testimony in the
*Velez* lawsuit, and searched plaintiff's emails.  Def.'s Facts ¶
24; Def.'s Investigation Documents Regarding Plaintiff Filed
Under Seal, Jan. 12, 2007 Memorandum Regarding Investigation of
Plaintiff DO792-802("Jan. 12, 2007 Mem."), p. 1.

   While the majority of Fulton's specific claims against
plaintiff were not corroborated, some of them were.



   In addition, the investigation revealed several other
incidents or behaviors which were corroborated.
These incidents/behavior include:



- 

The investigation was completed on January 12, 2007.   Jan. 12,
2007 Mem. p. 1.

### D.   Plaintiff's Termination and this Lawsuit

After learning the results of the investigation, Larrison
"made the decision to terminate [plaintiff's] employment for
inappropriate conduct in violation of [Novartis'] anti-
discrimination and anti-harassment policies." Def.'s Ex. F,
Declaration of Sharon Larrison ("Larrison Decl.") ¶ 3.   On
January 22, Michelle Bermudez, Director of Human Resources, sent
Larrison some "speaking points" for Larrison to use during the
termination meeting.   Pl.'s Ex. 32, Jan. 22, 2007 E-mail from M.
Bermudez to S. Larrison ("Jan. 22, 2007 Email").   The speaking
points set forth the history of the complaints, the investigation
that was conducted, and the "themes" that the investigation
uncovered.   Bermudez characterized the "themes" as:
"inappropriate sexual comments that are very pervasive,"
including the WIFE joke; comments about womens' breasts; displays
of offensive materials on his computer; and inviting women to sit
on his lap. Jan. 22, 2007 Email.   The email ends with the
following statements:

> In reviewing the earlier conduct memo [regarding
> Emerson] as well as allegations raised early on from
> the declarations [of Holland and Fulton], as well as
> feedback from the recent interviews, [the] decision has
> been made to terminate him for repeated inappropriate
> comments and conduct about women.
>
> If he questions you about "what[']s new" since the
> conduct memo, you can advise him that we've learned
> from this additional feedback (which has been
> corr[o]borated) about the **full scope of the behavior** []
> which we weren't aware of at the time of the conduct
> memo.  Advise him we are looking in totality at
> everything and not just focusing on what[']s new.

Jan. 22, 2007 Email (emphasis in original).  Plaintiff's

employment with Novartis was terminated the following day.  Kate

Tierney, a woman under age 40 who had been on plaintiff's sales

team in the past and had worked in pharmaceutical sales since

1998, replaced plaintiff after his termination.  Pl.'s Facts ¶

124; Jan. 12, 2007 Mem. p. 7.

On or about June 11, 2007, plaintiff filed a complaint with

the Equal Employment Opportunity Commission and the District of

Columbia Office of Human Rights alleging age and gender

discrimination.  First Am. Compl. ¶ 19.  He filed this action on

January 23, 2008.  In December 2008, the Court dismissed three

counts of plaintiff's amended complaint: wrongful termination in

violation of public policy, breach of implied covenant of good

faith and fair dealing, and defamation.  Minute Order of Dec. 8,

2008.  The Court permitted plaintiff's age discrimination, sex

discrimination, and breach of contract claims to go forward. The

parties completed discovery, and the defendant has moved for

summary judgment.  Defendant's motion is now ripe for

determination by the Court.

## II.   STANDARD OF REVIEW

Summary judgment should be granted only if the moving party

has shown that there are no genuine issues of material fact and

that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991

(D.C. Cir. 2002).  "A fact is material if it 'might affect the

outcome of the suit under the governing law,' and a dispute about

a material fact is genuine 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"

*Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The

party seeking summary judgment bears the initial burden of

demonstrating an absence of genuine issues of material fact.

*Celotex*, 477 U.S. at 322. In determining whether a genuine issue

of material facts exists, the Court must view all facts in the

light most favorable to the non-moving party. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of more

than mere unsupported allegations or denials and must be

supported by affidavits or other competent evidence setting forth

specific facts showing that there is a genuine, material issue for trial. Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 322.

## III. ANALYSIS

Defendant moves for summary judgment on plaintiff's discrimination claims and on his breach of contract claim. The Court will explore them in turn.

### A. Plaintiff's Discrimination Claims

#### 1. Governing Law

Under Title VII, the ADEA, and the District of Columbia Human Rights Act, the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's sex or age. *See* 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 621 *et seq.*; D.C. Code § 2-1401.01 *et seq.*; *see also Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999); *Carpenter v. Fed'l Nat'l Mortgage Assoc.*, 165 F.3d 69, 72 (D.C. Cir. 1999).

Traditionally, courts have analyzed discrimination claims using the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, where an employer has asserted a legitimate, non-discriminatory reason for the action being challenged,

> the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment . . . the district court must resolve one central question:  Has the employee produced sufficient evidence for a

> reasonable jury to find that the employer's asserted
> non-discriminatory reason was not the actual reason and
> that the employer intentionally discriminated against
> the employee on the basis of race, color, religion,
> sex, or national origin?

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C.

Cir. 2008) (citation omitted) (emphasis in original).  This

framework also applies to age discrimination claims.  *See, e.g.,*

*Baloch v. Kempthorne*, 550 F.3d 1191, 1197 n.2 (D.C. Cir. 2008).

A plaintiff has the burden to show that "the employer's

stated reason for the employment action was not the actual reason

(in other words, was a pretext)."  *Brady*, 520 F.3d at 495.  "A

plaintiff can carry this burden by demonstrating that a non-

discriminatory motive asserted by a defendant is false, or

otherwise 'presenting enough evidence to allow a reasonable trier

of fact to conclude that the employer's proffered explanation is

unworthy of credence.'"  *Downing v. Tapella*, -- F. Supp. 2d --,

No. 09-2421, 2010 WL 2989848 at *3 (D.D.C. July 27, 2010)

(citation omitted) (quoting *Desmond v. Mukasey*, 530 F.3d 944, 962

(D.C. Cir. 2008)).

### 2.    Sex and Age Discrimination Claims

Defendant moves for summary judgment on the grounds that it

terminated plaintiff because "he had engaged in inappropriate

sexual conduct in the workplace" and "violated its anti-

harassment policies."  Def.'s Mem. at 1.  Plaintiff responds that

this is pretext, and that the real reason defendant terminated

him was to make itself look good in the face of mounting pressure from the *Velez* lawsuit.[3]  After careful consideration, the Court finds that plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact that Novartis' asserted non-discriminatory reason for terminating him was pretextual. Accordingly, the Court **GRANTS** summary judgment on plaintiff's discrimination claims.

Plaintiff argues that Novartis had been aware of allegations of misconduct "for years," but ignored them until faced with "the pummeling being leveled at the company by *Velez*."  Pl.'s Opp'n at 25.  This claim is not supported by competent evidence.  The record contains no evidence that there were any allegations of misconduct by plaintiff before Jaime Holland's claims appeared in the *Velez* lawsuit in June 2005.  Indeed, plaintiff himself asserts that he had an "unblemished" record of employment at

---

[3] In his opposition to defendant's motion for summary judgment, plaintiff focuses almost exclusively on his argument that defendant is lying about its reason for terminating him.  He does, however, briefly suggest Novartis' decision to replace him with a female under age 40 is also evidence of discrimination. Pl.'s Opp'n at 18.  This argument is unavailing.  It is well established that plaintiff's replacement by an individual outside his class is insufficient to demonstrate discrimination, much less reverse discrimination.  *See, e.g., Dunaway v. Int'l Bhd. Of Teamsters*, 310 F.3d 758, 767 (D.C. Cir. 2002) (plaintiff's replacement by person under 40 does not create genuine issue of material fact with respect to age discrimination); *Hunter v. Rice*, 480 F. Supp. 2d 125, 135 (D.D.C. 2007) (explaining additional requirement necessary to show reverse discrimination on the basis of sex).

Novartis until the events underlying the instant case.[4]  Pl.'s
Facts ¶ 43.  Moreover, plaintiff admits the company neither
investigated the Holland allegations nor disciplined him because
of them.  Pl.'s Facts ¶¶ 56-58.  On the other hand, Novartis
acted quickly and decisively to investigate claims that had
nothing to do with the lawsuit: claims of sexual harassment from
a current employee, Beth Emerson, who was not involved in *Velez*.
When Novartis' human resources representative RoseAnn Schwerdt
became aware of Emerson's complaints, she conducted an immediate
and thorough investigation which resulted in a disciplinary
meeting and a conduct memo placed in plaintiff's file.

Similarly, plaintiff points to no evidence that Novartis
terminated him because of the Fulton allegations in the *Velez*
case.  To the contrary, the record is undisputed that Novartis
did not credit the Fulton allegations *per se*.  Instead, defendant
conducted an investigation into the substance of the allegations
by reviewing plaintiff's emails and talking with ten then-current

---

[4] In his opposition brief, plaintiff argues that defendant
had a "culture" of ignoring "the most basic of anti-
discrimination and harassment policies."  Pl.'s Opp'n at 27.
This may indeed be true.  However, the only evidence that
Novartis management knew of plaintiff's behavior is plaintiff's
deposition testimony that different managers had heard him tell a
version of the WIFE joke where "F" stood for "fooling around."
Aiello Dep. 77, 82, 235-36.  Plaintiff consistently denied
engaging in any of the other forms of misconduct alleged.  *See*
Pl.'s Opp'n at 13, 18, 24-25.  The Court, therefore, declines to
accept plaintiff's argument that Novartis was previously on
notice of his alleged behavior when he consistently denied that
behavior occurred.

employees.  Plaintiff has not alleged, much less provided any
evidence, that any of the employees interviewed were involved in
the *Velez* lawsuit.  Plaintiff further admits that he was not
terminated until six months after the Fulton declaration, after
defendant had completed its investigation and obtained evidence
corroborating several allegations regarding plaintiff's alleged
misconduct from sources unconnected to *Velez*.  Accordingly, the
Court cannot conclude that defendant's termination of plaintiff
was motivated by the ongoing litigation in *Velez*.[5]

Finally, as evidence of pretext, plaintiff argues that the
underlying sexual harassment never occurred.  A significant
portion of his opposition brief is dedicated to attacking
Fulton's credibility and impugning Holland's motives.  Plaintiff
ignores the statements of several other current employees who
corroborate the allegations and highlights the statements of
others who said they had never witnessed plaintiff engage in
inappropriate conduct.  Pl.'s Opp'n at 15-16; Jan. 12, 2007 Mem.

The Court finds plaintiff's argument about the details of
the underlying conduct largely misplaced.  As this Circuit has

---

[5] Plaintiff's related argument that Novartis terminated him
in order to "make a show" of enforcing its anti-harassment
policies for the *Velez* lawsuit also lacks record support.  To the
contrary, plaintiff admits that he was "the only employee
terminated as a result of *Velez*."  Pl.'s Opp'n at 18.  Plaintiff
fails to explain how a single termination of an area sales
manager would aid Novartis in defending against what he
repeatedly refers to as "the second-largest class action gender
discrimination suit in history."  Pl.'s Opp'n at 7.

17

squarely held, "[t]he question is not whether the underlying sexual harassment [] occurred; rather, the issue is whether *the employer honestly and reasonably believed* that the underlying sexual harassment [] occurred." *Brady*, 520 F.3d at 496 (emphasis in original); *see also id.* at 495 ("If the employer's stated belief about the underlying facts is reasonable in light of the evidence, [] there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts."). In this case, the employer presented unrebutted evidence that three individuals complained about plaintiff's inappropriate conduct toward women, that it undertook two separate investigations into the allegations, and that numerous sources *not including* Holland or Fulton corroborated several different allegations of plaintiff's misconduct. Although plaintiff asserts that the investigation was tainted, "he did not produce evidence sufficient to show that [Novartis'] conclusion was dishonest or unreasonable." *Id.* at 496.[6]

---

[6] In a related argument, plaintiff alleges his termination was discriminatory because he had not been accused of inappropriate conduct occurring subsequent to the Emerson allegations. Plaintiff points to language in his conduct memo which states "should you demonstrate any subsequent conduct that is deemed to be inappropriate . . . you will be subject to further disciplinary action up to and including termination," and argues that defendant's decision to terminate him in the absence of "subsequent conduct" demonstrates pretext. Def's Ex. B., Conduct Memo; Pl.'s Ex. 32, Jan. 22, 2007 Email; Pl.'s Opp'n 23-25. While the Court understands plaintiff's frustration that he was terminated despite a lack of "subsequent conduct," this does not create a reasonable inference of discrimination in this case.

In sum, the plaintiff has failed to meet his burden to establish that defendant's stated reason for terminating him – "repeated inappropriate comments and conduct" towards women, *see* Pl's Ex. 32, Jan. 22, 2007 E-mail – is "unworthy of credence." *Desmond v. Mukasey*, 530 F.3d at 962.   Summary judgment on plaintiff's discrimination claims is therefore **GRANTED**.

**B.   Plaintiff's Contract Claim**

Defendant moves for summary judgment on plaintiff's breach of contract claim, arguing that plaintiff was an "at will" employee who could be terminated for any reason.   Plaintiff makes two arguments in response, neither of which has merit.   First, he claims that the conduct memo he received following the Emerson allegations constituted a written employment contract.

---

As this Circuit has repeatedly held, "there is a distinction between discrimination claims . . . and the fact that a termination may not have been fair.   Consistent with the courts' reluctance to become involved in the micromanagement of everyday employment decisions, the question before the court is limited to whether the plaintiff produced sufficient evidence of discrimination, not whether he was treated fairly." *Vickers v. Powell*, 493 F.3d 186, 196 (D.C. Cir. 2007) (internal citations and quotations omitted); *see also Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). The Court declines to endorse plaintiff's argument, which would effectively preclude an employer from terminating an employee for later-discovered conduct, no matter how egregious, so long as that conduct had occurred before the employee had been officially warned.   Such a decision would place the Court in the role of "a super-personnel department that reexamines an entity's business decisions," which is neither authorized by Title VII nor by binding Circuit precedent. *Barbour*, 181 F.3d 1346 (internal citation omitted); *see also Fishbach v. Dist. of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

Specifically, he references the statement "[defendant is] confident that . . . we will not have another occurrence or similar situation going forward . . . However, . . . should you demonstrate any subsequent conduct that is deemed to be inappropriate or unprofessional, you will be subject to further disciplinary action up to and including termination of your employment."   Def.'s Ex. B, Conduct Memo.   Plaintiff argues that this constitutes an employment contract in which Novartis promised he would not be terminated unless he engaged in "subsequent conduct" like that alleged by Emerson.   *See* Pl.'s Opp'n at 28-29; *see also* Pl.'s Opp'n at 28-29 (also arguing that the same language spoken by Larrison during plaintiff's disciplinary meeting constituted an oral contract).

Plaintiff's argument finds no support in the law.   "In the District of Columbia, where there is no clear expression of an intent to enter into a contract for a fixed period," it is presumed that the parties have entered into "the ordinary business contract for a continuing employment, terminable at the will of either party." *Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington, D.C. v. Beards*, 680 A.2d 419, 432-33 (D.C. 1996) (quoting *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C. 1979)).   Plaintiff has offered nothing to rebut that presumption.   The conduct memo warns plaintiff that he will face further discipline if he engages in future misconduct;

20

it contains no hint that if he does *not* engage in future misconduct the job is contractually his, let alone "for a fixed period" of employment. *Sullivan*, 399 A.2d at 860. The Court declines to find an employment contract existed; accordingly, plaintiff's breach of contract claim fails.

Plaintiff's second contract claim is likewise without merit. He appears to allege that defendant failed to train its workforce in accordance with its written anti-harassment policies, and such failure "was a breach of its written promises and assurances" to plaintiff. Pl.'s Opp'n at 29. The Court does not take issue with plaintiff's contention that Novartis' culture was not one which promoted respect for women. Plaintiff, however, cites no facts or law that support his claim that defendant breached any contract with *him*, nor can the Court discern any contract claim that exists on this basis. Accordingly, the Court will **GRANT** defendant's motion for summary judgment on plaintiff's contract claim.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**. Because this Memorandum Opinion discusses material the parties filed under seal in accordance with the [17] Protective Order entered by the Court in March 2009, it is initially being filed under seal. An appropriate Order granting

summary judgment and directing the parties to submit a redacted opinion for public viewing accompanies this Memorandum Opinion. Consistent with this Order, the parties shall submit a sealed filing with the Court including their joint proposed redactions by no later than October 14, 2010.

**Signed:**     **Emmet G. Sullivan**
             **United States District Judge**
             **September 30, 2010**